A. SIDNEY DAVISON COAL CO., INC., Respondent, *v.* WESTON, DODSON & CO., INC., Appellant.

First Department, June 6, 1924.

Sales — action by seller of coal to recover balance due and damages for refusal to accept delivery — counterclaim for failure to deliver — extension of time for delivery on contract within Statute of Frauds must be in writing — oral extension may be valid on ground of equitable estoppel — estoppel arises where delivery could have been made in time but was not so made in reliance on extension — facts on which estoppel could be based not shown — evidence of oral extension should have been excluded — time not extended by failure of buyer to supply cars — counterclaim based on difference in contract price and market price states cause of action — motion to dismiss first cause of action for balance due on coal accepted properly denied.

In an action to recover the balance due on coal sold under a written contract and for damages for failure to accept a part of the coal, in which the defendant interposed a counterclaim based on the failure to deliver, it was error to admit evidence of an oral extension of the time for delivery, since the original written contract of sale was within the Statute of Frauds and, therefore, any extension thereof should have been made in writing.

While an oral extension of a contract which is required to be in writing may be binding on the ground of equitable estoppel, in a case where delivery could have been made in the time specified in the original contract but was not so made because the seller relied on the oral extension, the facts in this case do not show that the plaintiff failed to make the deliveries within the time specified in the original contract in reliance upon the alleged extension of time to deliver.

The defendant is not a producer of coal but does business as a jobber and the contract of sale was for coal from a certain specified region and not from any particular mine and, therefore, the time for delivery was not extended by the failure of the buyer to furnish cars for shipment, since it was impossible to know from what particular mine the coal would be shipped to fill the order, and further-

more, the conduct of the parties indicates that it was not their intention that the defendant would furnish the cars for shipment.

The defendant's counterclaim which was based on the failure of the plaintiff to ship coal and was to recover the difference between the contract price and the market price at the time when shipment should have been made, should not have been dismissed, since the jury might have believed from the testimony that the time for delivery of the balance was not extended, and since the evidence proves the contract, an order to ship the coal, the non-delivery thereof, the buyer's ability to pay, the damages and the demand, and there was no defense effective to defeat the claim, as matter of law.

The court properly refused to dismiss plaintiff's first cause of action which was to recover the balance due on coal actually shipped and accepted, since there was no dispute as to the facts constituting that cause of action.

APPEAL by the defendant, Weston, Dodson & Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff entered in the office of the clerk of the county of New York on or about the 30th day of October, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying the defendant's motion for a new trial made upon the minutes.

*Curtis, Fosdick & Belknap* [*Chauncey Belknap* of counsel], for the appellant.

*Jacob M. Kram,* for the respondent.

McAvoy, J.:

In 1920 the plaintiff, A. Sidney Davison Coal Co., Inc., had an office in New York city, where it was engaged in the business of jobbing coal. It had no mines of its own, but bought from the operators and others, and sold where it could at a profit. The defendant, Weston, Dodson & Co., Inc., was also in the coal business, with a main office in Bethlehem, Penn.

The parties in this action made an oral agreement, which later the plaintiff confirmed in a letter of May 28, 1920. On June first they signed and exchanged copies of a so-called Weston, Dodson " Bituminous Order " form, by which the defendant ordered the plaintiff to ship to the Tidewater Coal Exchange, Pool 31, Canton Piers, Baltimore, 10,000 tons of Youghiogheny run-of-mine gas coal, " minimum tonnage 300 tons per day, maximum tonnage about 1,000 tons per day." " Youghiogheny " was not the name of any specific mine, but of a region in western Pennsylvania in which the product of any mine would fulfill the requirements. The price of seven dollars and twenty-five cents was typewritten in the form under the printed caption " Cost price net ton F. O. B. Mine." The order did not provide that an embargo would excuse shipments, but that if the piers should be embargoed, " line shipments " should be furnished, which means that other shipping destinations along the railroad lines

**516** DAVISON COAL CO., INC., *v.* WESTON, DODSON & CO., INC.

First Department, June, 1924. [Vol. 209

as distinguished from the tidewater terminals were to be provided. The order form was silent as to when shipments were to begin, but the plaintiff's letter of May twenty-eighth, confirming the oral sale, said: " Shipments to be started early next week."

If shipments had been started the following week and had been maintained at even the minimum rate of 300 tons daily, the full 10,000 tons would have been delivered in thirty-four working days, certainly long before August thirty-first. In fact, during this period the market price of the coal, according to the proof, " went sky high," as the plaintiff's witness Mr. Cunningham termed it; and by the plaintiff's count only 80 tons were delivered before August thirty-first. These, so the plaintiff claims, were shipped on June ninth to Baltimore, but the defendant denies their receipt. According to the plaintiff's witnesses the reason why they shipped no more than 80 tons during these three months was that the defendant failed to provide cars to receive the coal.

Around the first of September, no other shipments having been in the meantime made, one of plaintiff's representatives asked Knepper, defendant's agent, for further shipping instructions, and he told them he would issue an " open order " for shipments to Ashtabula, Ohio, with the right to have the shipments apply on the old 10,000-ton order. This " open order " No. 4215 was issued on September fourth. It was superseded on September twenty-third by another " open order," which is practically the same except for the name of the defendant's customer. The uncontradicted testimony was that in the coal trade " open order " means an order subject to cancellation at any time without notice, and under which the buyer is liable only for shipments made before cancellation. Shortly after the second of these orders was issued, the coal market began to decline rapidly. At the same time the plaintiff began to make heavy shipments, which reached a total of 6,370 tons in the week beginning October twenty-first. According to the plaintiff's shipping notices to the defendant, sixty-two cars, or about 3,000 tons, were shipped on October twenty-sixth alone.

On October twenty-seventh the defendant sent the following telegram to the plaintiff, referring by number to the last " open order:" " Hold shipment our order four six naught eight the Ore & Coal Exchange." This was confirmed by a memorandum reading: " As wire to-day, hold shipments this order till further advised." On October twenty-eighth the plaintiff acknowledged receipt of this telegram and said: " Please advise promptly when to resume."

Plaintiff's testimony shows that no cars were shipped after October twenty-seventh; but the original car loading records from

two mines show that shipments continued until November first, and that in violation of the order to hold, seventeen cars were shipped in the five days following October twenty-seventh. All of these cars were paid for by the defendant, in ignorance of their true shipping date, except the two cars, B. & O. Nos. 135,763 and 133,729, which were not paid for and which give rise to the plaintiff's first cause of action.

On January twenty-first and twenty-eighth and on February tenth the plaintiff wrote the defendant demanding payment of a balance of $899.36, said to be then due, which as reduced to $664.46 is apparently the subject-matter of the first cause of action; but these letters did not mention any claim for damages for cancellation of the June contract.

Judgment has been rendered here for over $11,000 damages based on defendant's alleged unwarranted cancellation of its contract of purchase and its refusal to take and pay for the commodity ordered. The plaintiff claimed that its time for delivery was extended by oral agreement to December 1, 1920. Defendant asserts error in the court's permitting the jury to give effect to the alleged oral extension of the time for performance.

The law question which arose on the trial and is now urged is whether, where parties have entered into a written contract of sale, required to be in writting under the Statute of Frauds (Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571), the time for performance stated in the writing may be extended by proof of an alleged oral agreement entered into after the original time has expired against a plea of the statute. The extension of time, which founds the plaintiff's cause, rests on parol. There is an obvious danger of rendering the statute of no force, if a party, after failing to perform his written contract on time, can wait for a favorable turn of the market and then prove an extension of the time by oral agreement. The general rule is that the Statute of Frauds forbids oral changes of the time for performance as well as of any of the other terms of a contract which it requires to be in writing.

Williston on Sales (§ 122) says with respect to time of performance: " No distinction is taken in the cases between large changes from the original agreement and slight ones, such as the extension for a brief period of the time for performance. The validity of such a distinction has been explicitly denied. ' Every part of the contract in regard to which the parties are stipulating must be taken to be material.' (Per PARKE, B., *Marshall* v. *Lynn*, 6 M. & W. 116, 117)." (See, also, *Hill* v. *Blake*, 97 N. Y. 216; *Clark* v. *Fey*, 121 id. 470.)

Allowance of an oral change in the original time for delivery

**518** Davison Coal Co., Inc., *v.* Weston, Dodson & Co., Inc.

First Department, June, 1924. [Vol. 209

of this commodity of fluctuating value has brought about a basis of a very substantial claim, which, if the statute were rigidly adhered to, would be frustrated, as was the purpose of its adoption.

Judge Cardozo, in *Imperator Realty Co.* v. *Tull* (228 N. Y. 447) shows the doctrine has not been abandoned. He said: " I think it is the law that where contracts are subject to the statute, changes are governed by the same requirements of form as original provisions. * * * Some courts have drawn a distinction between the formation of the contract and the regulation of performance. * * * The distinction has been rejected in many jurisdictions. * * * It has never been accepted by this court, and the question of its validity has been declared an open one. * * * I think we should reject it now. * * * I do not know where the line of division is to be drawn between variations of the substance and variations of the method of fulfillment. I think it is inadequate to say that oral changes are effective if they are slight, and ineffective if they are important. Such tests are too vague to supply a scientific basis of distinction. * * * The field is one where the law should hold fast to fundamental conceptions of contract and of duty, and follow them with loyalty to logical conclusions."

But it is said that there are reasons why the general rule excluding proof of the alleged oral extension should not govern in this case. The general rule against oral variations of a contract within the statute is departed from in this State only in cases where the facts give rise to an equitable estoppel against the party who denies the oral modifications. An alleged oral extension of time in a contract required to be in writing will not be enforced unless there is evidence that the party who claims the benefit of the oral agreement could have performed within the original time set, but refrained from doing so in reliance on the alleged extension. The basis of permitting proof of oral modifications of contracts required to be in writing under the Statute of Frauds is the doctrine of estoppel. In *Thomson* v. *Poor* (147 N. Y. 402) the rule is thus announced: " * * * where one party to a contract, *before the time for performance by the other party has arrived,* consents, upon his request, to extend the time of performance, he must be presumed to know that the other party relies upon the consent, and until he gives notice of withdrawal he has no just right to consider the latter in default, although meanwhile the contract time has elapsed. We think the principle of equitable estoppel applies in such case."

In the case of *General Electric Co.* v. *National Contracting Co.* (178 N. Y. 369 [1904]) a similar principle is upheld in this language: " It seems that the plaintiff could have manufactured and delivered the articles embraced in the contract *within the time specified in the*

*writing, and would have done so except for the attitude of the defendant,* which led the plaintiff to believe that delivery on the days mentioned was not necessary. * * * [p. 376] The defendant, under the circumstances of the case, is estopped from setting up the defense of non-performance as to time."

Upon the trial of this cause there was no claim or evidence of estoppel upon which to base a waiver of defendant's right to invoke the statutory protection against such a claim. The complaint merely alleges the making of an agreement " that the time for the delivery of the balance of said coal, to wit: three thousand one hundred nine (3,109) tons, was to be extended to December 1st, 1920." No estoppel or waiver, or facts which might give rise to these, are pleaded.

Deliveries of the 10,000 tons contracted for, if begun early in the week following May twenty-eighth and continued at 300 tons a day, would have been complete before August thirty-first, and more than two months before the alleged extension was solicited by the plaintiff. Evidence of the alleged oral extension of time to perform should have been excluded, and for failure to show performance within the written contract time the complaint should have been dismissed.

Besides there are other considerations which make a reversal of this judgment imperative. We cannot for a moment concede that the original time for delivery was extended until after October twenty-seventh, on plaintiff's theory that performance by the defendant of its alleged duty to provide the cars was a condition precedent to shipment by the plaintiff, and consequently that there was no default in the plaintiff's performance. The plaintiff was not a producer and could ship its coal from any mine in the entire Youghiogheny region, which, according to Barrows, plaintiff's agent, covered " quite a stretch of territory." The plaintiff did, in fact, ship 6,891 tons, for which the defendant furnished not a single car, which clearly indicates the parties' intent as to the meaning of their own compact. Mr. Barrows testified: " I never on any shipment heard from Weston Dodson that they had the cars placed." Mr. Barrows was the plaintiff's " field agent," and said that his duties were " To represent the Davison concern in the coal field; to attend to the loading, and the shipment and preparation of the coal in general."

It would be an impossible duty to learn by intuition what mines the seller, who bought from various mines in the region mentioned, elected to ship from, and to know where to furnish cars to carry the coal.

The question is one as to the intention of the parties, and, as

**520** Davison Coal Co., Inc., *v.* Weston, Dodson & Co., Inc.

First Department, June, 1924. [Vol. 209

pointed out, their own conduct is so illustrative as to amount to demonstration of the true meaning. The expression F. O. B. merely makes it the duty of the seller to load at his own expense. Whether the means of conveyance on which the goods are to be loaded are to be furnished by him or by the buyer is not indicated by this requirement. Nothing appeared here upon which to base the ruling of the trial court that the contract required defendant to furnish the cars, and hence the circumstances shown here by the undisputed evidence entitle defendant to a dismissal of the second cause of action, because plaintiff failed to make a proper tender of the coal remaining undelivered.

Neither should the trial court have dismissed the defendant's first counterclaim. This first counterclaim was to recover the difference between the contract price and the market price in June or July, 1920, of the 3,109 tons which the plaintiff failed to ship on the contract of June first. The full contract requirements of 10,000 tons should have been shipped within this time, but any claim as to the balance was, of course, given up by the defendant's subsequent acceptance of 6,891 tons shipped on the " open orders."

The jury under the proof might have believed the defendant's testimony that the time for delivery of this coal was not extended after the " open order " shipments were stopped on October twenty-seventh. It is admitted that the defendant ordered shipments to Baltimore; that the defendant was able to pay for the coal, had it been delivered; and that 3,109 tons were never delivered by the plaintiff. It appeared from the testimony that the market price ranged from eight dollars a ton on June first to ten dollars on July first, as compared with the contract price of seven dollars and twenty-five cents. The defendant's written notice to the plaintiff of December second included a demand for " failure to ship in accordance with the terms of this order," unless the plaintiff accepted the cancellation, which was not done. Every element of an affirmative cause of action is, therefore, complete: the contract, the order to ship, the non-delivery, the buyer's ability to pay, the damages and the demand.

Since the elements of a cause of action were proved and there was no defense effective to defeat the claim as a matter of law, it is evident that the plaintiff's motion to dismiss should not have been granted.

We think that the defendant's motion to dismiss plaintiff's first cause of action was properly denied. There was no dispute as to the indebtedness alleged to be due plaintiff by reason of the matters set forth in plaintiff's first cause of action. No part of plaintiff's testimony with respect to conversations had with the defendant's officers, wherein the said indebtedness was admitted, was denied.

The trial of the case proceeded without any evidence whatsoever on behalf of the defendant as to this issue. In fact the learned court charged as follows: " The first cause of action was for coal actually sold and delivered. There is no dispute but that the coal was received by the defendant, that they paid a part of it. and that there was a balance due of $618.08. That is the first cause of action. If you find that the coal was delivered — and I think there is no dispute about that — and that the defendant failed to pay that part of the purchase price, then you will find for the plaintiff on the first cause of action." No exception was taken to this portion of the charge, and we find no reason in the record why the complaint on that cause should have been dismissed.

The judgment for the plaintiff on the second cause of action should be reversed and the complaint on said cause of action dismissed as a matter of law, judgment on the first cause of action affirmed, and the direction dismissing defendant's first counterclaim should be set aside, and a new trial ordered therein, with costs to appellant to abide the event.

CLARKE, P. J., DOWLING, SMITH and MARTIN, JJ., concur.

Judgment for plaintiff on second cause of action reversed and complaint on said cause of action dismissed, judgment on first cause of action affirmed, and the direction dismissing defendant's first counterclaim reversed and a new trial ordered thereon, with costs to appellant to abide the event. Settle order on notice.