**H. P. WILLMAN, Doing Business as Poppers Supply Co., Appellant,**

**v.**

**Harold M. ALVER, Oscar J. Alver, Raymond N. Alver, Lucile M. Alver, Jeannette V. Alver and Mildred M. Alver, a Co-partnership Doing Business as Premier Popcorn Company, Appellees.**

**No. 15429.**

United States Court of Appeals Ninth Circuit.

Jan. 3, 1958.

J. P. Stirling, John F. Reynolds, Portland, Or., for appellant.

Clark & Clark, M. H. Clark, William E. Tassock, Portland, Or., for appellees.

Before STEPHENS, Chief Judge, and POPE and CHAMBERS, Circuit Judges.

STEPHENS, Chief Judge.

In the District Court the judge presiding granted a motion for a directed verdict in favor of the plaintiff individuals doing a co-partnership business under the name of Premier Popcorn Company. The court referred the amount of damages to the jury which fixed the amount at the sum of $10,800. Willman, the defendant, brought this appeal.

His main contention is that it was error for the trial court to direct a verdict for appellee and to find as a matter of law that the contract sued upon had neither been modified nor rescinded, that this was a question for the jury. He also complains of the instructions to the jury on the measure of damages. We are of the opinion that there is no clear error in the instructions as given or in the court's refusal to give tendered instructions. We shall not further consider them.

■ The record discloses that the parties signed a contract in Portland, Oregon, on May 11, 1953, whereby Willman agreed to buy and the Alvers agreed to sell 7,200 100-pound bags of popcorn, to be delivered in twelve monthly installments of 600 bags each, beginning in October, 1953. The price agreed upon was $9.00 per 100 pounds, FOB seller's place of business, Watseka, Illinois. The terms of the contract are set out haec verba in the margin.[1]

1. "Premier Popcorn Co., as Seller, agrees to sell and Buyer agrees to purchase popcorn in the quantity, at the price and under the terms and conditions stated herein.

"Seller warrants that the popcorn shall be shelled, cleaned and processed, fit for human consumption and shall pass the requirements of the Federal Food, Drug and Cosmetic Act [21 U.S.C.A. § 301 et seq.] Seller shall not be liable for breach of warranty, expressed or implied, unless notified in writing by the buyer of the breach within 30 days from Buyer's receipt of the popcorn and unless given a reasonable opportunity to inspect the popcorn which Buyer claims to be faulty in Seller's original shipping bags. No warranties, expressed or implied, shall apply to any popcorn after it has been removed from Seller's original bags. For breach of warranty, the Sole remedy shall be the right to receive from Seller popcorn of equal amount and proper quality to replace the faulty popcorn.

"Seller's performance shall be excused to the extent that it is prevented by strikes, war, fire or other casualty, inability to secure shipping facilities, failure of contract growers to deliver a normal yield, or any other cause beyond Seller's control.

"Where the basis of shipment is f. o. b., delivery of goods by Seller to the carrier at point of shipment shall constitute delivery to Buyer, subject to the lien of Seller for the unpaid purchase price.

"If there is more than one installment of goods shipped or stipulated herein to be shipped, this contract shall be construed to be severable as to each installment. If, however, Buyer shall commit a default as to any installment of goods, then Seller's performance of the balance of the contract shall be excused, at Seller's option and without notice. Each installment shall be invoiced at once upon shipment thereof (except as is hereinafter provided).

"Buyer shall furnish Seller complete shipping instructions at least 10 days before the stated shipping time for each installment. If Buyer fails to give Seller shipping instructions as required herein then at the expiration of the stated shipping time Seller may at Seller's option and without notice (a) hold the goods and invoice the Buyer for same or (b) extend the time of shipment or (c) be excused from delivering the balance of the goods or continuing the performance of the contract.

"Upon rescission of the contract in whole or in part by Seller for a default of Buyer, such earnest money as has been deposited under this contract shall, at the option of Seller, be forfeited as liquidated damages.

"Time is the essence of this contract. Upon any default of Buyer, Seller reserves the right to resell said popcorn without notice.

"Any State or Federal tax that increases the cost of the popcorn on this order or any State or Federal sales or excise tax created by any law or resulting from any executive or governmental order that becomes operative subsequent to this date shall be for the account of Buyer and added to price herein stated.

"Buyer will hold Seller harmless from the effects of any law or regulations re-

Thereafter, an option to cancel the last six months' deliveries of corn was granted to the buyer by the seller's letter dated May 20, 1953, and the buyer took advantage of the option in a letter dated December 15, 1953. No point in the case arose from the option agreement or action under it. The issue here is related to the six proposed shipments of 600 bags each, beginning in October of 1953. During the month of October, 1953, the market price on popcorn fell, and the parties had several conversations in which the buyer sought to have the contract price lowered to $8.00 per bag. The parties do not agree as to what was said at these conversations or as to the intent thereof. However, on October 23, 1953, the seller wrote the buyer in part as follows: " * * * As to the contract dated May 11, 1953, we will hold this contract in abeyance and ship you popcorn for the time being at a price of $8.00 cwt. including the bag f.o.b. our plant." It does not appear that the buyer ever responded to the letter, but he did not insist on receiving the shipments as called for in the contract, nor did he authorize the shipment of any corn under any circumstance. However, sometime after the date of this letter, conversations were had and the buyer, contrary to the testimony of the seller, contended, and now contends, that it was agreed that the contract price would be reduced. Toward the end of December of 1953, seller, by letter, notified buyer that he could no longer hold the contract in abeyance and requested shipping instructions. Buyer replied by ordering popcorn to be shipped at $8.00 per bag ($9.50 f.o.b. Portland), with the proviso, "Do not ship under any other terms." The seller insisted on performance at the contract price, and the buyer followed with an order dated February 2, 1954, for all six cars, but again demanded the popcorn at the lower price, with other conditions not in the contract.

The seller notified the buyer through his attorney that it would have to regard the contract as discontinued. An action for damages followed.

Throughout the various negotiations and conversations that began between these parties after the contract was entered into, the price of popcorn fell, and the buyer sought to buy popcorn at the most advantageous price. He sought to show at the trial that seller had agreed to lower the price, and in his request for shipment, he variously referred to the contract price first "as you quoted last November," and in his February order he referred to the "contract dated May 11, 1953, as amended * * * October 23, 1953." At the trial it was his contention that the parties had agreed to modify the contract price downward, to $8.00 per 100-pound bag. As indicated, conflicting testimony in this regard was admitted without objection. The trial court, however, took the view that inasmuch as the contract came under the Statute of Frauds, any attempt to modify a contract required to be in writing by the statute could not be done except by meeting the requirements of the statute, that is, with another writing.

In this regard, there were but two writings that were pertinent, the contract of May 11, 1953, and the letter of seller agreeing to hold the contract in "abeyance," dated October 23, 1953. Viewing these writings, the trial court felt it could find nothing to substantiate the buyer's modification theory, nor his theory of rescission. A verdict for the seller was directed, but the fixing of the damage award was left to the jury.

It is also a well recognized principle that where a statute requires that a contract must be in writing, or evidenced by a written memorandum, the terms of that contract cannot be varied by subsequent oral agreements. Craswell v.

---

lating to the labeling of the popcorn if Seller uses the bags and labels furnished by Buyer.

"This contract expresses the entire agreement between the parties and any change hereof must be in writing.

"This contract to be binding on Seller must be accepted by Seller through Seller's Home Office in Watseka, Illinois."

Biggs, 160 Or. 547, 86 P.2d 71; Oregon Statutes, § 75.040(1), Uniform Sales Act, § 4.[2] One of the best statements of this proposition is found in Imperator Realty Co. v. Tull, 228 N.Y. 447, 127 N.E. 263.

It is a well established principle that the legal effect of a writing is ordinarily determined by the court and not the jury, and only in cases of doubt as to what the writings mean, will the question be referred to the jury for determination. Wyllie v. Vinton, 97 Or. 350, 363, 192 P. 400. This is not a case where the writings are unintelligible, Western Auto v. Sullivan, 8 Cir., 210 F.2d 36, or where there is a confusion in the writings, National Molasses Co. v. Herring, 8 Cir., 221 F.2d 256. The court had before it the original contract and a writing which stated that the contract would be held in "abeyance." The letter of October 23, 1953, which buyer relies on, and did rely on in insisting on delivery in February of 1954, cannot be distorted to find an agreement that the seller would lower the contract price. The writings were clear on their face, and we can see no issue to present to the jury. A trial court is justified in directing a verdict when there is no substantial evidence to support recovery by the party against whom the verdict is being directed, or where the evidence is all against him, or so overwhelming as to leave no doubt what the fact is. Garrison v. United States, 4 Cir., 62 F.2d 41.

On the question of damages, the buyer puts forth various contentions, that the seller was obligated to mitigate damages by accepting buyer's offer at $8.00 per bag, or that the installments for October, November, and December having passed, seller was limited to damages for only three months, or that the contract by its terms limited seller. We find none of these theories to be of any merit. The established principle is that when a contract for the sale of goods is breached, the damages will be measured by taking the difference between the contract price and the market price, at the time of the breach. The question of damages was submitted to the jury, and that body chose to accept seller's figures on what the market price was at the time of breach. See National Importing & Trading Co. v. E. A. Bear & Co., 324 Ill. 346, 155 N.E. 343; Davison Coal Co. v. Weston, Dodson & Co., 209 App.Div. 514, 205 N.Y. 49; Williston on Contracts, § 596. The jury awarded damages upon that principle.

The judgment of the District Court is affirmed.

---

2. The pertinent section of the Oregon Statute of Frauds is as follows: "75.040(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action * * * unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."