**Emil Hays, Appellant, v. Pennsylvania Railroad Company, Appellee.**

**Gen. No. 47,358.**

First District, First Division.

November 3, 1958.

Released for publication November 25, 1958.

Robert J. Kenney, John J. Naughton, of Chicago (Henslee, Monek & Murray, of counsel) for appellant.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago (Robert H. Bierma, A. L. Foster, Max E. Wildman, William R. Jentes, of counsel) for appellee.

JUSTICE SCHWARTZ delivered the opinion of the court.

This is an action brought under the provisions of the Federal Safety Appliance Act and the Federal Employers' Liability Act. A verdict of $37,000 was rendered by the jury, and the court after overruling post-trial motions entered judgment. Plaintiff appeals and assigns errors on two grounds: first, the gross inadequacy of the verdict; and, second, error in two instructions on damages. The judgment must be reversed because of serious error in the instructions. We need not, therefore, consider the question of the adequacy of the verdict, except as it relates to the argument that substantial justice has been done and, therefore, errors in the instructions should not be made the ground for reversal.

Plaintiff, who was 45 years old at the time of the accident in November 1950, was injured while attempting to stop a tank car in defendant's railroad yard in Pittsburgh, Pa. Defendant admitted its liability, and there is no need to go into detail with regard to the accident. After the accident plaintiff was taken to the hospital, where he remained seven or eight days. While there he was in the care of an orthopedic surgeon who found, among other things, pain and tenderness on deep pressure over the *second lumbar vertebra.* The physician's diagnosis was one of acute lumbar sprain and the possibility of aggravation of an old-pre-existing injury. The pre-existing injury had occurred in 1942 when plaintiff in the freight service of defendant had sustained an injury to his back, diagnosed as a compression fracture of the second lumbar vertebra. That claim was settled and plaintiff returned to work at what is called an 8–A–1 placement job, a type of job, such as passenger service, given an employee not physically able to do freight service. After fourteen months plaintiff went back to freight service.

After the second accident plaintiff was hospitalized a second time in December 1950 for about eleven days and was then fitted with a brace of stainless steel or aluminum, extending from the lower part of his back to his shoulders (called a Taylor brace). He was advised to avoid heavy activity. Still suffering and disabled, plaintiff was hospitalized in December 1951 a third time, and was placed in traction. In January 1952 he was hospitalized a fourth time, and a spinal fusion was performed, which involved removing pieces of bone from his leg and inserting them as a graft between the vertebrae for the purpose of forming a bridge between the first and fourth lumbar vertebrae in order to immobilize the fractured second lumbar vertebra. He was again placed in a Taylor brace. After that he attempted to earn some money by taking

370

pictures of children on a small pony. He testified that the work was too much for him and caused pain in his back and legs. In March 1953 he was again hospitalized, that time for 16 days. He was X-rayed and given diathermy treatments and manipulation, but continued to suffer severe pain. His condition did not improve, and in June 1953 he was hospitalized for the sixth time, and another spinal fusion was performed. Following that fusion he was placed in a cast. In November 1953 for the seventh time he went back to the hospital and had his last operation. The cast was taken off, but feeling weak he remained in the hospital for a few days. There was testimony on plaintiff's behalf that following the last operation he would not be able to maintain a normal day's work without developing pain in the back; that his condition was permanent; that his back was practically rigid and stiff from the shoulder down, and that the success of any further operation was doubtful by reason of the previous operations.

During the first six months of 1955 plaintiff worked for a general construction company doing plastic tile work. He also did some odd jobs. He made about $200 at that work. During that period he made application to the railroad for restricted employment. That was refused in February 1955. Following that, plaintiff went to work for a federal housing project as a maintenance man at a salary of about $275 a month. He worked there eleven months and earned $3000. That work, he testified, was very difficult for him and he was compelled to leave. In December 1956 he went to Florida to look for employment, but was unsuccessful. He also did some work around his house, fitting out a room for possible use as a photographic studio. The most he ever earned at photography was $50 a month. His gross earnings with the railroad for the year preceding the accident was $3308.93. The rate of pay was

increased from time to time and in November 1956 the hourly rate of base pay had risen to $19.15 per day.

Defendant estimates that plaintiff was entitled to an award of $20,000 for loss of past and future earnings, and that the verdict, therefore, includes $17,000 for pain and suffering. Plaintiff, on the other hand, estimates that the minimum compensation for loss of wages was over $21,000, minimum compensation for pain and suffering over $15,000, and minimum compensation for loss of future earning power over $20,000, making a total loss of $57,000. As we view it, if the jury had been properly instructed, we would not disturb the verdict. On the other hand, the evidence would have supported a somewhat higher verdict.

 It is in this light that we must consider the first instruction in question, which is as follows:

"With respect to wages, the Court instructs the jury that if the plaintiff could have worked in the past or if the evidence indicates that he is able to work in the future, then you must not award him damages for such period of time during which he might have worked in the past nor for such period of time as he might be able to work in the future. The issue in this respect is not whether plaintiff did work but whether or not he could have worked during all or any part of the time in question in the past and whether or not he can or might work in the future. The defendant is liable for such loss of earnings in whole or in part, past and future, if any, as may have been proved by a preponderance of the evidence."

It will be noted that the jury are directed that they cannot allow damages for any period for which plaintiff might have worked in the past nor for such period of time as he might be able to work in the future. This is obviously erroneous. Plaintiff was entitled to recover the difference between the lesser earnings result-

ing from his injury and the greater amount which he would have earned if he had not been injured. It is true that the last paragraph of the instruction seeks to correct this error, but in a general way, which could only have confused the jury. The second defect in the instruction is that it tells the jury in substance that they were not to allow any damages if plaintiff could have worked during all or any part of the past and whether or not he could or might work in the future. This makes the instruction one applicable only to permanent disability. That in a case of this kind is a serious error. We cannot say whether the jury did or did not read the instruction. We must assume that the giving of instructions is not an idle gesture. Moreover, this is not one of those instructions stating a general principle of law in a manner not precisely correct. That kind of error may be overlooked. This is an instruction by which a jury is told what items of damage may be considered by it and yet omits certain important items. Such an instruction must be substantially accurate. The error in the instant case can be compared to an instruction in a suit for breach of contract where elements of damage are omitted.

In a case which we had occasion to consider some years ago the converse of the instant issue was involved. There was submitted to the jury the question of a loss of earnings by a plaintiff in his business, although there was no proof by which to measure such loss. The judgment was not excessive, but we felt compelled to reverse it because we could not say whether the jury had allowed anything for such loss. Levinthal v. Chicago Transit Authority, 345 Ill. App. 185, 102 N.E.2d 545 (1951).

The second instruction complained of is as follows:

"The plaintiff cannot recover in this case for any damage which was not the natural and direct result of the accident in question and if you find from the evi-

dence that the plaintiff has now or has had any other disability resulting from conditions which existed in the plaintiff before the accident in question or which have developed since such accident and of which the accident in question was not the proximate cause, then you are not permitted by law to allow him anything for such disability and should not do so from motives of sympathy, or any other motive."

Plaintiff's first criticism of this instruction is that under the Federal Employers' Liability Act the accident need not be the natural and direct cause of the injury, and he cites two cases, Hoyt v. Central Railroad, 243 F.2d 840, and O'Day v. Chicago River & Indiana R. Co., 216 F.2d 79. It seems to us that plaintiff is confusing the question of liability and the question of damages. In Hoyt v. Central Railroad, supra, the court instructed the jury that plaintiff had the burden of proving that the negligence of the defendant was the proximate cause of the injuries, and that by proximate cause was meant the direct cause, "that which produces a result without any interfering or intervening cause." The court held that this and other instructions gave the jury the impression that any negligence on the part of the defendant had to be the sole proximate cause of the plaintiff's injury, and it considered this to be prejudicial. The instruction in the instant case does not relate the injury to negligence on the part of defendant, but to the accident. The same point is true with respect to O'Day v. Chicago River & Indiana R. Co., supra, where the court held that if the injuries resulted "in part" from the negligence of the railroad, the railroad was liable. That is quite different from the instruction in the instant case.

■ However, another criticism of the instruction appears to us to have some weight; that is, plaintiff bases his claim for damages in part on the theory of

374

aggravation of a pre-existing injury, and this is virtually eliminated from consideration of the jury by the instruction complained of. On a retrial of the case, this instruction should be modified to state the law more precisely insofar as it has a bearing on plaintiff's theory of aggravation of the pre-existing injury.

The judgment is reversed and the cause is remanded with directions to the trial court to set aside the verdict and award plaintiff a new trial.

Judgment reversed and cause remanded with directions.

McCORMICK, P. J. and ROBSON, J., concur.