**Kyle SMALLEY, Appellant,**

v.

**The DULUTH, WINNIPEG & PACIFIC RAILWAY COMPANY, a Minnesota corporation, Appellee.**

**No. 90–5376.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1991.

Decided July 22, 1991.

Don C. Aldrich, argued (William G. Jungbauer and Patrick R. Gillespie, on brief), Minneapolis, Minn., for appellant.

Raymond L. Erickson, argued (Cheryl M. Richardson, on brief), Duluth, Minn., for appellee.

Before LAY, Chief Judge, and McMILLIAN and ARNOLD, Circuit Judges.

LAY, Chief Judge.

This is a Federal Employer's Liability Act, 45 U.S.C. § 51 (1988), case in which the injured worker, Kyle Smalley, received an award for $85,100 against his employer, the Duluth, Winnipeg & Pacific Railroad Company which was found one hundred percent liable. The district court denied Smalley's motion for a new trial. Smalley asserts, on appeal, prejudicial error arising from an improper jury instruction on damages relating to past and future employment. We agree and reverse and remand for a new trial on damages only.

On July 11, 1985, Smalley, twenty-seven years old, fell on a loosely compacted landing area while dismounting from a train at the railroad's main switching yard in the Duluth, Minnesota, Superior, Wisconsin area. The yard had been undergoing reconstruction and renovation. Smalley lost his footing as he was dismounting and fell. He injured his knee, suffering traumatic chrondomalacia, which required three operations.

█ Smalley argues that one of the jury instructions erroneously directed the jury to award him nothing if he could have worked during the period in question. The instruction also told the jury to award him the difference between what he could have earned had he worked and what he had made in his prior job with the railroad. He asserts that the jury was confused by the instruction which did not clarify which was the proper rule.[1] The erroneous instruction stated:

With respect to loss of earnings in the past, you are instructed that if plaintiff could have worked in the past but did not, you must not award him damages for loss of earnings for the period of time during which he might have worked. The issue in this respect is not whether plaintiff did work but whether or not he could have worked during all or any part of the time in question.

If you find that he could have worked, but at a lesser salary, because of his injury, his damages must be limited to the difference between the salary he might have earned and the greater amount which he could have earned if he had not been injured.

Similarly, with respect to future loss of earnings, you are instructed that if plaintiff is able to work in the future, you must not award him damages for future loss of earnings. However, if plaintiff is able to work in the future, but his earnings will be diminished because of his injury, he is entitled to recover the difference between the lesser salary he might earn and the greater amount which he could have earned if he had not been injured. The burden of proving that plaintiff could have worked in the past or will be able to work in the future is on the defendant.

It is undisputed that the first portion of the instruction is obvious error. *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 594 (6th Cir.1986); *Felder v. Union Pac. R.R.*, 660 P.2d 911, 914 (Colo.Ct.App.1983); *Hays v. Pennsylvania R.R.*, 19 Ill.App.2d 368, 371–73, 153 N.E.2d 737, 739 (1958). However, the issue is whether the following portion of the instruction corrects the error. The second portion of the instruction on diminished earning capacity is, of course, correct. *Jones*, 800 F.2d at 594.

█ We are reminded that all instructions must be read as a whole, and one erroneous instruction does not require reversal if the error is corrected by a subsequent instruction or by the instructions in their entirety. *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1212 (8th Cir.1990); *Wright v. Farm-*

---

1. The jury asked the court two questions while it was deliberating. "(1) Did the railroad lay Smalley off or was he fired or is he still employed? (2) Are they still covering his medical or has the company stopped any medical for Smalley?" Appellant's App. at 19.

The trial judge was not present at the time of the jury's interrogatories; the magistrate received the question for the court and declined to answer. The magistrate informed the jury it would have to follow the instructions and weigh all of the evidence it had received.

*er's Co-op of Ark. & Okla.*, 620 F.2d 694, 697 (8th Cir.1980). At the same time, we also follow the general proposition that if two or more conflicting statements of law are suggested, it cannot be presumed that the jury followed the proper rule. *Johnson v. Bryant*, 671 F.2d 1276, 1281 (11th Cir.1982); *see also Pate v. Seaboard R.R.*, 819 F.2d 1074, 1080–81 (11th Cir.1987) (finding jury possibly misled by passenger contributory negligence charge in light of entire charge, parties' contentions, and evidence presented); *Somer v. Johnson*, 704 F.2d 1473, 1478 (11th Cir.1983) (finding charge invited jury to make impermissible alternative findings); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1372 (5th Cir.1981) (requiring new trial when uncertain whether jury actually was misled).

We evaluate the effect of error in instructions in light of the record as a whole. *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 517 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). On this basis, we have reviewed the verdict in light of the parties' contentions, the evidence, and the entire charge.

At the trial, doctors testified that Smalley was permanently injured and could not work at his prior railroad job as a switchman. Dr. Mark Carlson, an orthopedist, testified that Smalley was restricted permanently from activities that required bending, stooping, or lifting more than twenty pounds. He also testified that Smalley was "permanently disabled from returning to his previous type of job with the railroad."

Dr. Robert Wengler, an orthopedist, testified that Smalley was still having pain in his knee after the surgeries and that he also was having some lower back problems and pain in his right leg. He also testified that the back problems and leg pain probably resulted from an altered gait caused by limping on the right leg. Dr. Wengler testified that Smalley's back problems would have an impact on his future activities, especially in the labor market. He testified that Smalley had permanent restrictions on his activities because of his knee and back problems. He stated that Smalley should not engage in activities requiring repetitive bending, stooping, or twisting of the back, or requiring heavy pushing or pulling, kneeling, or lifting more than twenty to twenty-five pounds.

Dee Koskela, a vocational rehabilitation consultant, testified that the restrictions on Smalley's physical activities limited the type of work he could do. She also testified that Smalley's intellectual capacity had been tested and he was found to be borderline mentally retarded. He quit school in the eleventh grade and could read only at the fifth grade level. Koskela testified that Smalley's employment options were restricted because of his physical and intellectual limitations and his few transferable job skills. Smalley had few transferable job skills because he had only worked for the railroad. She testified that he would be able to perform only menial labor because of his physical, mental, and educational limitations. She testified that the best job Smalley could get would be "an entry level unskilled job that he can learn with a short demonstration, without a lot of changes." She believed that such a job would pay between $4.00 and $4.50 an hour.

Smalley's economist testified that Smalley had a past economic loss of $123,000 and future losses of over $795,000, deducting for a minimum wage job, after taxes, and reduced to present value. The economist assumed Smalley would work for the railroad until he reached the age of sixty-five. The railroad testified that Smalley was guaranteed $3,000 a month for up to ten years, under a collective bargaining agreement, if he was physically able to work. The railroad asserted, however, that Smalley would only be eligible for the $36,000 a year for ten years if he had lost his job because of the railroad's relocation of its operations from Minnesota to Wisconsin. There was no evidence that Smalley qualified for these benefits. The railroad asserted that it offered Smalley special light duty work and also offered to retrain

him but he refused.[2] The railroad testified that Smalley also refused assistance in finding alternative employment. The railroad argues that Smalley's economist did not take into account employment opportunities Smalley refused, his educational background, his capacity for retraining, or other economic factors. Smalley was unable to keep any of the manual labor type jobs he got because of his injuries.[3]

We find the overwhelming medical evidence supports Smalley's disability and inability to work. The railroad's suggestion that Smalley could have worked is nothing more than a suggestion. Although the jury was entitled to weigh all of the evidence, a reading of the record establishes there is little evidence to find that Smalley could have been retrained for other employment or that he was capable of working at other jobs. The inadequacy of the verdict strongly suggests that the jurors believed that since he could have worked or been retrained for another job, he was entitled to no compensatory damages.

Applying the instructions in their entirety is basic to our evaluation. When there exists, however, internal contradiction or inconsistency, courts should not presume the jury understood the proper rule and rejected the erroneous rule. As judges, we know the second part of the rule is the correct statement of law. We also know, as judges, that the first portion is clear error. If we were sitting as the jury, we would undoubtedly apply the proper rule. The question remains, however, would a lay jury? Although the district court discussed mitigation of damages with the jury when it read the instructions to the jury, we are uncertain that the jury followed the proper rule. There is a genuine probability, created by the instruction in this case,

that the jury was misled to Smalley's detriment. *See Somer*, 704 F.2d at 1478. Because the jury might have possibly employed the wrong criteria, the error was not harmless and a new trial is required on the issue of damages. *See Johnson*, 671 F.2d at 1281; *Pate*, 819 F.2d at 1080–81. We find in the interests of justice that Smalley is entitled to a new trial on the issue of damages. Reversed and remanded.

ARNOLD, Circuit Judge, concurring.

I join the Court's opinion and desire to add only a few words. The major argument in support of affirmance in this case is that the instruction, when read as a whole, is not incorrect, or at least would not likely be misunderstood by a reasonable juror. This is a strong argument, and it has made me hesitate as to the proper result on this appeal.

In the end, however, I think the Court is doing the right thing. The amount of money awarded by the jury here indicates fairly clearly that it thought the plaintiff should have accepted the railroad's offer to employ him as an engine man. The trouble with this approach is that the record contains no evidence of what an engine man would have been paid. If the record showed that an engine man would have made the same as Smalley had been paid as a train man before the accident, the jury's verdict would be well grounded, and we could be sure that the arguably erroneous instruction had no effect. But as things turned out, it seems likely that the jury really thought that Smalley's refusal of the offer of re-employment was an absolute bar to any further damages, regardless of

**2.** After his accident, Smalley worked for the railroad driving a van transporting crews and weigh bills to various locations for two days. He had to quit because he was having trouble with his knee. The railroad discussed other types of possible employment with Smalley after doctors told Smalley he probably would never be a train man again. There was some discussion about Smalley becoming an engine man but he was not interested. The railroad testified that Smalley said "if he could not be out doing the type of work that he loved to do, being a

train man, he felt it would be very difficult to do anything else on the property, so he was not desirous of any other position on the railroad." The railroad testified that it offered Smalley vocational testing services or testing on two occasions but he was not receptive.

**3.** The parties stipulated that Smalley earned either $2,948.00 or $3,668.00 in employment income from 1985 to the time of trial. *Compare* Appellee's Brief at 3 *with* Tr. 122 III at 7.

what he would have earned if he had accepted the offer.

For these reasons, I conclude that the jury probably understood the instruction in the wrong way, and that a new trial on damages is the proper result.