# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 94-3622

_____

C. Thomas Ryther,           *
                             *
    Plaintiff - Appellee,   *
                             *  Appeal from the United States
    v.                    *  District Court for the
                             *  District of Minnesota.
KARE 11, an NBC Affiliate;  *
Gannett Co., Inc.,       *
                             *
    Defendants - Appellants.   *

_____

Submitted: October 22, 1996

Filed: March 6, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, LAY, MCMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, <u>en banc</u>.

_____

LAY, Circuit Judge.[*]

_____

[*]RICHARD S. ARNOLD, Chief Judge, McMILLIAN, WOLLMAN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, join this opinion for the Court in its entirety. FAGG, BEAM and HANSEN, Circuit Judges, join Parts I, II, and III of the Court's opinion. HANSEN, Circuit Judge, concurs in the result reached in Part IV of the Court's opinion.

FAGG, BEAM and HANSEN, Circuit Judges, have filed a separate opinion, concurring in part and dissenting in part.

LOKEN, Circuit Judge, has filed a dissenting opinion. BOWMAN and MAGILL, Circuit Judges, join this opinion in its entirety. FAGG, WOLLMAN, BEAM, HANSEN, and MURPHY, Circuit Judges, join in Part I.A. of this dissenting opinion. FAGG,

This age discrimination case comes before this court on a rehearing en banc. Our earlier panel opinion, affirming the district court's denial of a new trial and the denial of a post-verdict motion for judgment as a matter of law, appeared in 84 F.3d 1074 (8th Cir. 1996). At oral argument before the court en banc, KARE 11, which appeals from the judgment of the district court, challenged only the sufficiency of the evidence and argued that the plaintiff failed as a matter of law to make a submissible case to the jury. Because we deem this issue to be the significant claim on appeal, and in order to clarify the standard to be followed in this circuit in age discrimination cases, primarily we address that issue.

KARE 11, a Twin Cities television station, refused to renew C. Thomas Ryther's contract as lead sportscaster for a fifth three-year term. In 1991, when Ryther was terminated, he was fifty-three years old. Ryther sued KARE 11 and its parent, Gannett Co., Inc. (collectively "KARE 11"), alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Following a jury verdict in Ryther's favor, the district court, the Honorable David S. Doty presiding, denied a motion for a new trial and, alternatively, a motion for judgment as a matter of law. The court entered judgment awarding Ryther $1,254,535 in back pay, front pay, liquidated damages, and attorneys' fees. See Ryther v. KARE 11, 864 F. Supp. 1510 (D. Minn. 1994). KARE 11 appeals. This court, acting en banc, now affirms the judgment of the district court.

---

BEAM, HANSEN, and MURPHY, Circuit Judges, join in Part II.A. of this dissenting opinion. FAGG, BEAM, and HANSEN, Circuit Judges, join in Part II.B. of this dissenting opinion. And FAGG and BEAM, Circuit Judges, join in Part II.C. of the dissenting opinion.

Ryther served as a sports anchor for Channel 11 from December 1979 until July 1991, pursuant to a series of four three-year contracts. Gannett/KARE 11 purchased the station in 1983, and in 1988 Janet Mason became KARE 11's vice president of news. At that time, the sports department's members included Jeffrey Passolt and Randy Shaver, both under age forty. In the summer of 1988, Ryther was approximately fifty years of age. Ryther's responsibilities began changing that year, shortly after Mason's appointment to vice president. KARE 11 removed Ryther from Prep Sports Extra, a program he then co-anchored with Shaver, and during 1989, the year in which Linda Rios Brook became station manager, Mason removed Ryther from the six o'clock news and assigned him to a recreational segment on the five o'clock news. Passolt replaced Ryther as sports anchor during the six o'clock time slot. In May 1990, Shaver was named executive producer of sports, a position to which Ryther was entitled under his contract. Shaver assumed many of Ryther's organizational and planning duties.

On March 6, 1991, shortly after Ryther discovered he was being excluded from promotional photos, Ryther confronted Mason about the status of his contract. Mason told him his contract would not be renewed because he had failed in the market research. After several events detailed in the district court's opinion, 864 F. Supp. at 1515-16, Ryther left KARE 11 and filed this lawsuit.

The decision not to renew Ryther's contract was made by Rios Brook, Richard Modig, Vice President of Broadcast Operations, and Mason. When Rios Brook was asked at trial what market research she relied on in making the decision about Ryther, she responded that it was the "Gallup" research, in reference to a survey conducted

for KARE 11 in June 1990 by the Gallup Organization ("1990 Gallup Survey"). Tr. IV-136. Mason, similarly, said that she arrived at that decision <u>after</u> she got the 1990 Gallup Survey. Tr. V-194, V-197.

In earlier years, 1981 and 1989, the Atkinson-Farris Communications research firm ("Atkinson") performed market research to determine KARE 11's ratings. In 1990, in part because KARE 11 found the Atkinson research incomplete, KARE 11 sought new market research by commissioning the 1990 Gallup Survey. The 1990 Gallup Survey reported that Ryther had seventy-six percent viewer recognition, whereas Mark Rosen, a sportscaster at competitor WCCO, had eighty-one percent recognition. Rosen was rated number one and Ryther number two in the overall Twin Cities' market. The 1990 Gallup Survey reported that Ryther "underperform[ed]" and that he was not a strong player for KARE 11.

KARE 11 urges that Mason, Rios Brook, and Modig made the decision not to renew Ryther's contract in August 1990, upon receipt of the 1990 Gallup Survey. The primary issue at trial was whether the overall market research was the true reason for Ryther's dismissal, or merely a pretext for age discrimination. Ryther asserts that he offered evidence to show that the market research was not the true reason for his dismissal, that in fact the decision to dismiss him was made prior to that time, and that the research was biased and merely a pretext for unlawful age discrimination.

The district court, in denying KARE 11's motion for judgment as a matter of law, carefully summarized the evidence from which a jury could reasonably find that the proffered reason for refusing to rehire Ryther masked discrimination. Judge Doty found that there was sufficient evidence for the jury reasonably to conclude

that:  the defendants made the decision not to renew Ryther's contract before the 1990 Gallup Survey; some of Ryther's duties had been transferred to younger people and Ryther's contract was not renewed despite positive performance evaluations from KARE 11; KARE 11 deceived Ryther by leading him to believe that his work was commendable, in order to prevent him from improving upon his alleged deficiencies; the 1990 Gallup Survey was purposely designed so that Ryther would not get a fair rating, thus masking the discriminatory reason for his termination; and KARE 11 provided a hostile work environment for Ryther because of his age.  Ryther, 864 F. Supp. at 1715-18.

It is well settled that we will not reverse a jury's verdict for insufficient evidence unless, after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party. Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996).

## II

The law governing the allocation of evidentiary burdens in discrimination cases is well established.  See generally St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-12 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-06 (1973). Since Hicks, this court has applied Hicks, Burdine, and McDonnell Douglas to several age discrimination cases.  However, for the sake of guidance to the bar and district courts, we take this opportunity, sitting en banc, to unify and clarify our understanding of the Supreme Court's standard.  The facts presented here, as in Hicks, fall under a standard that does not require

proof of direct discrimination for the plaintiff to make a submissible case for the jury.[1]

In discrimination cases, it is now well settled that a plaintiff's presentation of a prima facie case creates a legal presumption of unlawful discrimination. This presumption places an obligation upon the employer to produce evidence of a legitimate, nondiscriminatory reason for the plaintiff's discharge. If the employer carries this burden, the <u>legal</u> presumption of unlawful discrimination "drops out of the picture." <u>Hicks</u>, 509 U.S. at 511; <u>accord</u> <u>Burdine</u>, 450 U.S. at 254 & n.7, 255. Once this occurs, the Supreme Court articulated the overall process:

> The defendant's "production" (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven "that the defendant intentionally discriminated against [the plaintiff]", [<u>Burdine</u>, 450 U.S. at 253]. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will <u>permit</u> the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is <u>required</u>," 970 F.2d, at 493 (emphasis added).

<u>Hicks</u>, 509 U.S. at 511 (footnote omitted).

---

[1]It is imperative to recognize that under the facts submitted, this is not a reduction-in-force case, <u>see</u> <u>Nelson v. Boatmen's Bancshares, Inc.</u>, 26 F.3d 796 (8th Cir. 1994), and <u>Kehoe v. Anheuser-Busch, Inc.</u>, 96 F.3d 1095 (8th Cir. 1996), nor a mixed-motive case, <u>see</u> <u>Radabaugh v. Zip Feed Mills, Inc.</u>, 997 F.2d 444 (8th Cir. 1993), where different rules apply.

Thus, according to <u>Hicks</u>, when the plaintiff's evidence of pretext challenges the defendant's articulated nondiscriminatory reason, such evidence may serve as well to support a reasonable inference that discrimination was a motivating reason for the employer's decision.  As the Supreme Court has observed, "when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with <u>some</u> reasons, based his decision on an impermissible consideration such as [age]."  <u>Furnco Construction Corp. v. Waters</u>, 438 U.S. 567, 577 (1977).

We find support from the recent en banc decision by the Third Circuit.  In <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061 (3d Cir. 1996) (en banc), the court set forth the same standards and interpretation of <u>Hicks</u> as we do now.  Chief Judge Dolores K. Sloviter wrote:

> [W]e have understood <u>Hicks</u> to hold that the elements of the prima facie case and disbelief of the defendant's proffered reasons are the threshold findings, beyond which the jury is permitted, but not required, to draw an inference leading it to conclude that there was intentional discrimination.[2]

<u>Id.</u> at 1066-67.[3]

---

[2] <u>Sheridan</u> does not expressly acknowledge, as we do today, that evidence of pretext <u>does not always</u> support an inference of intentional discrimination.  As we note, there may be cases where the evidence of pretext is inconsistent with an inference of intentional discrimination.  <u>See</u> <u>infra</u> n.4 and accompanying text.

[3] The Third Circuit noted that other federal courts of appeals, including this court, have interpreted <u>Hicks</u> in a similar manner, citing cases from the D.C. Circuit, the Second Circuit, the Fourth Circuit, the Sixth Circuit, the Seventh Circuit, the Eighth Circuit, and the Ninth Circuit.  <u>See</u> <u>Sheridan</u>, 100 F.3d at 1067-68

-8-

In sum, when the employer produces a nondiscriminatory reason for its actions, the prima facie case no longer creates a legal presumption of unlawful discrimination. The elements of the prima facie case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff. This is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination.[4] Furthermore, as the Hicks Court explained, the

_____

(citing Shaw v. HCA Health Servs., 79 F.3d 99 (8th Cir. 1996) (Morris Arnold, Loken, and Beam, JJ.)).

[4]Our cases have reflected this principle. For example, in Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328 (8th Cir. 1996), the plaintiff argued that the employer's proffered reason for the termination was false by showing that the actual reason he was discharged was that he confronted his employer about the company's alleged SEC violations. See id. at 1337. The court affirmed summary judgment for the employer. In Barber v. American Airlines, Inc., 791 F.2d 658 (8th Cir. 1986), employees in the protected age group claimed disparate treatment. The employer asserted the nondiscriminatory reason for the disparate treatment was their lack of qualification. The employees' proof of pretext was that others within their age group were given privileges denied to them. The court found that this evidence of pretext did not provide a reasonable inference of age discrimination. Judge Richard S. Arnold observed:

> For even if plaintiffs were unfairly treated, and even if others were unjustly favored in the past, no inference of age discrimination can be drawn, for the simple reason that the employees who were allegedly given preferential treatment were not "young." They were in the same age group as plaintiffs. If any kind of discrimination is operating here, therefore, it is not age discrimination, and that is all this case is about.

Id. at 660.

In both Rothmeier and Barber, the evidence of pretext did not

plaintiff must still persuade the jury, from all the facts and circumstances, that the employment decision was based upon intentional discrimination.[5]  509 U.S. at 511 n.4.  Obviously, in

_____

support a reasonable inference of age discrimination.  The Seventh Circuit, sitting en banc, explained this principle in <u>Visser v. Packer Engineering Assoc.</u>, 924 F.2d 655 (1991) (en banc).  Judge Posner observed:

> [T]he age discrimination law does not protect an older employee from being fired without good cause.  It protects him from being fired because of his age.  If the employer offers a pretext--a phony reason--for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age.  This is just the test of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), transposed to the age discrimination setting.
>
> . . .
>
> A pretext, in employment law, is a reason that the employer offers for the action claimed to be discriminatory and that the court disbelieves, allowing an inference that the employer is trying to conceal a discriminatory reason for his action.  It is not . . . an unethical reason for action, or a mask for such a reason.  If [the employee was] really fired . . . because [the employee] was a whistleblower, or because [the employee's] primary loyalty was, as it should have been, to [the company] rather than to the person of [the CEO] of the company (these are closely related points, of course), this may show that [the CEO] is a bad man.  It does not show or even tend to show that [the employee] was fired because of his age.  It tends if anything to show the opposite, because if [the employee] was fired because of his disloyalty to [the CEO] the natural though not inevitable inference is that he was not fired because of his age.  Certainly his age had nothing to do with the direction of his loyalties.

<u>Id.</u> at 657 (citations omitted).

    [5]Thus, <u>Hicks</u> makes it clear that the plaintiff must show "<u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason."  509 U.S. at 515.  "It is not enough, in other words, to <u>dis</u>believe the employer; the factfinder must <u>believe</u> the

all age discrimination cases, the plaintiff must produce sufficient evidence of the elements of the prima facie case and where necessary, adduce sufficient proof of pretext to meet the traditional tests of summary judgment and judgment as a matter of law.  See Rothmeier, 85 F.3d at 1335 ("Intentional discrimination vel non is like any other ultimate question of fact:  either the evidence is sufficient to support a finding that the fact has been proven, or it is not.")

**III**

KARE 11 does not contend that Ryther failed to establish a prima facie case of age discrimination.  There exists ample evidence that the jury could reasonably believe that (1) Ryther was within the protected age group (he was fifty-three years old); (2) as manifested by his contract renewals and KARE 11's own evaluations, he had been performing his job at a satisfactory level for over twelve years; (3) his contract in 1991 was not renewed; and (4) KARE 11 replaced him with a younger person.  (Jeff Passolt was only thirty-three years of age and did not have as high a performance rating as Ryther.)

We turn to the fundamental issue in this case:  whether Ryther produced sufficient evidence to allow a jury reasonably to find that KARE 11 intentionally discriminated against him on the basis

---

plaintiff's explanation of intentional discrimination."  Id. at 519.  It is equally clear, however, that "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination and . . . . '[n]o additional proof of discrimination is required.'"  Id. at 511 (internal citation omitted).  As Justice Scalia explained, "rejection of the defendant's proffered reasons is enough at law to sustain a finding of discrimination," but "there still must be a finding [by the finder of fact] of discrimination."  Id. at 511 n.4.

of his age. Although much of the evidence is circumstantial, we agree with the district court's careful analysis that a reasonable jury could infer that KARE 11's asserted reason for discharge was false, and that the evidence was sufficient to allow a jury to find that KARE 11 engaged in age discrimination.[6]

## A. The Market Research as a Whole

Ryther urges that the record is replete with evidence that his research ratings reflected not his abilities, but KARE 11's failure to emphasize sports. The plenary evidence to this effect included the testimony of Ryther that, just days before his dismissal, Paul Baldwin, KARE 11's assistant news director, told him, "[t]he research isn't your fault," and explained that Ryther's showing relative to WCCO's Mark Rosen was the result of WCCO's promotion of Rosen, its ownership of broadcast rights in several major sporting events, and its emphasis on sports generally. Other evidence

---

[6]See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983) (recognizing that the "sensitive and difficult" issue of intentional discrimination will frequently be proven by circumstantial evidence of pretext, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes"); id. at 714 n.3 ("As in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence. The trier of fact should consider all the evidence, giving it whatever weight and credence it deserves."); International Bhd. of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977) ("[T]he McDonnell Douglas formula does not require direct proof of discrimination."); McDonnell Douglas, 411 U.S. at 804-05 (listing various types of circumstantial evidence as relevant to showing of pretext); Price Waterhouse v. Hopkins, 490 U.S. 228, 273 (1989) (O'Connor, J., concurring in judgment) (emphasis in original) (noting that "requiring the plaintiff to prove that any one factor was the definitive cause of the decisionmakers' action may be tantamount to declaring [anti-discrimination law] inapplicable to such decisions"); Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995) ("An age-discrimination plaintiff may rely on either direct or circumstantial evidence to prove that he has been the victim of unlawful discrimination.").

showed that Ryther continued to ask for better sports promotions, but was denied. In fact, Rios Brook admitted that "[sports] was not an area that I was concerned about," and Mason testified that "sports was relatively unimportant" in comparison to other parts of the newscast. Relatedly, Gallup Vice President Dr. Frank Newport admitted that Ryther's showing might be due in part to KARE 11's poor promotion of sports and noted that Rosen's recognition was "unusual" for a sportscaster. Yet despite KARE 11's own lack of sports promotion, Ryther remained the number two sportscaster in the market, second only to Rosen, and above KARE 11's own Jeff Passolt and Randy Shaver.[7]

There can be little doubt that, although it had before it the 1981 and 1989 Atkinson research, the jury could reasonably reject KARE 11's alleged reliance upon Ryther's low market ratings on the ground that KARE 11 kept rewarding Ryther for his performance. In fact, KARE 11 negotiated with Ryther and awarded him substantial salary increases in three different interim three-year contracts. These contract renewals could easily justify a finding that, in this interim period, Ryther's performance was more than adequate to fulfill KARE 11's programming interests.[8]

In May 1989, Lilyan Wilder, a training consultant to KARE 11, copied a letter to Janet Mason, written to Ryther after reviewing his performance in a training session. The letter read in part:

---

[7]In addition to the evidence of poor sports promotion, the jury reasonably could have believed Ryther's evidence that KARE 11's newscast gained a following not because of its personnel, but because of its programming following and preceding the newscast. "Cheers," for example, followed the 10:00 p.m. newscast.

[8]In 1988, Mason herself negotiated a new three-year contract with Ryther.

> It was a pleasure to see you again and to work with you. <u>Your authority, your sense of "sports" and the essence of it, are excellent.  Your timing, your play-by-play and your good, strong voice are all positive.</u>

Appellee's App. at E2 (emphasis added).  Likewise, as late as August 1, 1990, Barry Nash, a talent coach hired by KARE 11 in 1990, wrote about Ryther to Mason and Baldwin:

> Hats off to Tom for the effort to create reports with more universal appeal.  Innovations like the Three Musketeers footage he used to begin his piece on fencing are certainly a step in the right direction.

<u>Id.</u> at E5.[9]

Most significant, however, in the consideration of the conflicting evidence, notwithstanding the earlier Atkinson reports, is Mason's personal review of Ryther's performance in March 1990. She gave him the rating of "commendable," the second highest mark possible, and indicated that "his work is done quickly and

---

[9]At the same time, Nash wrote in part about Randy Shaver and Jeff Passolt, Ryther's eventual younger replacements:

RANDY SHAVER

His continued improvement is primarily a matter of content.  <u>None of the airchecks I viewed featured work that was memorable or especially creative in any way.</u>  It was simply competent, animated sportscasting.

JEFF PASSOLT

<u>The same criticisms apply to Jeff.</u>  His delivery is relaxed and professional.  <u>It is not exceptional</u>, primarily because none of the stuff I saw featured any especially creative content.

<u>Id.</u> at E6-E7 (emphasis added).

accurately; total job responsibilities are met."  Mason's 1990 review of Ryther also stated in part:  "As anchor:  knows the market & key players/contacts[;] he wants to put on a good product -- open to trying new ideas . . . .  As sports director -- has developed good working relationship with the movers & shakers of the professional & college sports world."  <u>With this kind of commendation written as late as March 1990, it is readily understandable how the jury could reject the prior market research of "underperformance" as the reason for Ryther's termination</u>.

Even assuming that the "research" allegedly relied upon included <u>both</u> the Atkinson reports and the 1990 Gallup Survey, we conclude that there is sufficient evidence for a reasonable jury to find that it played little or no role in KARE 11's decision not to retain Ryther in 1991.

**B.  Ryther's Claims that the 1990 Gallup Survey Was Biased**

Ryther testified that the 1990 Gallup Survey questions were both designed <u>and</u> interpreted to provide an incomplete picture of viewers' perceptions of his performance.  He initially challenged the 1990 Gallup Survey's methods as an incomplete means of obtaining research concerning his performance.

Gallup surveyed a random sample of viewers using two methods: a "Q score technique" and open-ended questions.  The Q score technique employs multiple questions to measure audience recognition and approval (particularly strong like and dislike) of the selected personalities.  Ryther was among twenty-five on-air personalities included in this portion of the survey.

Open-ended questions, by contrast, allow viewers to describe identified persons in their own words, and by Gallup's description are "designed to help [stations] gain a more complete understanding of what viewers think about key personalities."  For example, the 1990 Gallup Survey asked viewers, "How would you describe Jeff Passolt?  What comes to mind that you particularly like or dislike about him as a newscaster?"  The ten key personalities included Rosen, Passolt, and KARE 11's other lead anchors, among others. Ryther, however, was excluded from this portion of the research.

Ryther also notes Janet Mason's admission that in advance of the research she told Gallup that one of the "important issues" about which KARE 11 sought information was "the sportscaster position."  Although Mason identified Passolt and Rosen as "key personalities" for purposes of the research project, she did not so characterize Ryther.  Rather, she justified the omission of open-ended questions about Ryther on the grounds that their inclusion would have made the survey "too long" and that similar questions had been asked about him in 1989 research conducted by Atkinson. Mason also admitted, however, that the 1989 Atkinson project asked such "free response" questions concerning each of the ten other "key personalities."

KARE 11 dismisses Ryther's argument that it designed the 1990 Gallup Survey in a manner unfavorable to him as an irrelevant argument that is "without foundation and intrusive of KARE's business judgment."  Reply Br. at 8.  KARE 11's statement not only mischaracterizes Ryther's attack on the survey, which is plainly a claim that the survey was biased, but is incorrect as a matter of law.  As the Supreme Court unanimously observed in <u>Burdine</u>, the fact "that the employer misjudged the qualifications of the [plaintiff] does not <u>in itself</u> expose [the employer] to . . . liability, <u>although this may be probative of whether the employer's</u>

-16-

<u>reasons are pretexts for discrimination</u>."  450 U.S. at 259 (emphasis added).  The jury may thus consider as wholly relevant <u>both</u> whether the 1990 Gallup Survey was designed in a manner that from the outset disfavored Ryther, <u>and</u> whether the survey was actually a sound -- as opposed to pretextual -- basis upon which to make employment decisions.

It remains an open question whether, standing alone, this evidence would support the jury's verdict.  But we are concerned with whether the overall evidence supports a reasonable inference that age motivated KARE 11's actions.  <u>Hicks</u>, 509 U.S. at 511.  To that end, Ryther's attack on the survey is probative.  The <u>ultimate</u> concern, of course, is whether the employer gave an honest explanation of its behavior.  <u>See</u> <u>Harvey v. Anheuser-Busch, Inc.</u>, 38 F.3d 968, 973 (8th Cir. 1994).  Yet, in the nature of things, evidence that the defendant employer says it relied on market research later shown to be inaccurate may assist the finder of fact in determining whether the employer is giving an honest explanation of its actions.  <u>See</u> <u>Burdine</u>, 450 U.S. at 259.

As the district court held, the jury reasonably could have found KARE 11's explanations to be "trivial" and inferred that the real reason the defendants omitted Ryther from the open-ended questions was a fear that the results of the survey would undermine their age-based decision not to renew his contract.  Relatedly, a reasonable jury might also infer that, if it was unwieldy or redundant to repeat such questions about Ryther, KARE 11 ought to have excluded such repetitious questions about Passolt and Rosen as well.  In other words, a reasonable jury could have reasoned that, if it was redundant and costly to ask open-ended questions about Ryther, it was redundant and costly to ask open-ended questions about Rosen, Passolt, and the other eight "key personalities," all of whom were included in the 1989 Atkinson research.  That KARE 11

-17-

did not include Ryther in this portion of the 1990 Gallup Survey reasonably suggests that KARE 11 had already decided to terminate Ryther. Moreover, as the district court stated, the long delay between the research results and the time of Ryther's notice of dismissal reasonably suggests the defendants did not want to provide Ryther an opportunity to address his weaknesses, and thus supports the inference that KARE 11 had an age-based agenda to terminate Ryther. The jury had a right to believe that the survey was inadequate, biased, and in fact a subterfuge to mask KARE 11's age-based animus against Ryther.

**C.  Mason's Treatment of Ryther Before the Gallup Survey of 1990**

In McDonnell Douglas, the Supreme Court observed that "evidence that may be relevant to any showing of pretext includes facts as to the [employer's] treatment of [plaintiff] during his prior term of employment." 411 U.S. at 804. As the unanimous Court understood, evidence that the defendant treated the plaintiff, whose performance remained stable throughout the relevant period, differently upon a change in supervisors may, together with the elements of the prima facie case and evidence that the new supervisor "was out to get" him, support a reasonable inference that age motivated that difference in treatment. Id.; see also Hicks, 509 U.S. at 511.

The district court found sufficient evidence for the jury to conclude that Janet Mason's decision not to renew Ryther's contract was made before the 1990 Gallup Survey was commissioned. The evidence to this effect included Ryther's testimony that: (1) between 1988 and 1990, KARE 11 transferred his duties to younger members of the sports department; (2) when Mason assumed her role as Ryther's supervisor in 1988, KARE 11's managing editor, Marie

-18-

Kurken, told him to "watch [his] back" because Mason "was out to get" him, and he "was number one on her list, on her hit list, to get out of that news room"; (3) Mason treated Ryther as though he "couldn't seem to do anything right"; and (4) when Mason took over, he "went from being a valued member of the news staff sports department to almost a -- in Janet Mason's eyes, as an incompetent. And incidents kept happening that underlined and verified those words of Marie Kurken. It kept happening and happening and happening, so I noted them." In addition, there was documentary and testimonial evidence that Mason, in March 1990, gave Ryther the rating of "commendable," stating that his "work is done quickly and accurately; total job responsibilities are met," but shortly thereafter, when notifying him of his dismissal, explained the decision as based on the showing of earlier research that Ryther was a "failure" in the market.

A jury might reasonably infer from Ryther's "unimproved showing" that KARE 11 felt his long-term performance justified the non-renewal of his contract. But a reasonable jury might also infer that KARE 11's continuous approval and commendable ratings of that performance belie that claim. There exists substantial evidence that, after Janet Mason became Ryther's supervisor (and before the 1990 Gallup Survey), KARE 11 determined that Ryther's contract should not be renewed. Moreover, it cannot be said that no reasonable jury could have rejected as contrived Mason's explanation that she rated Ryther favorably in March 1990 out of fear that rating him unfavorably would cause him to fall apart emotionally. Such a statement may appear untruthful to reasonable sensibilities. A reasonable jury could also infer that Mason failed to notify Ryther of his alleged deficiencies for fear that

he might correct them,[10] or that Mason treated Ryther as "an incompetent" because she harbored an age-based animus against him. See Hicks, 509 U.S. at 511.  In sum, a reasonable jury could infer that Mason had made a decision to terminate Ryther before the 1990 Gallup survey was conducted.

**D.  Ryther Claims that KARE 11 Maintained a Pervasive Environment Unfavorable to Older Employees**

The district court relied on several portions of the record in holding that Ryther's evidence of a corporate atmosphere unfavorable toward older employees could reasonably support the jury's inference that Ryther was the subject of age discrimination. KARE 11 contends this evidence is insufficient, noting that statements made by employees not involved in Ryther's non-renewal and stray remarks in the workplace do not give rise to a reasonable inference of discrimination.  Not only is KARE 11's reduction of this evidence to a few "stray remarks" factually incorrect, but, more importantly, such evidence can, if sufficient together with other evidence of pretext, support a reasonable inference of age discrimination.  As the Supreme Court stated in McDonnell Douglas:

> Other evidence that may be relevant to any showing of pretext includes facts as to the [employer's] . . . general policy and practice with respect to [older persons'] employment.  On the latter point, statistics as

---

[10]In this regard, Ryther's claim paralleled the proof of pretextuality the plaintiff produced in Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 802 (8th Cir. 1994):

> Because [defendant's] April 27, 1989, memo shows he had already decided that [plaintiff] should be terminated and given early retirement and because [defendant] did not in fact permit [plaintiff] to correct his work performance, the jury could reasonably infer that [defendant] was hiding a motivation to fire Nelson because of his age.

> to [defendant's] employment policy and practice may be
> helpful to a determination of whether [its] refusal to
> rehire [plaintiff] conformed to a general pattern of
> discrimination against [older employees].

411 U.S. at 804-05 (footnote and citations omitted).

Although Ryther did not present his case in the form of statistical evidence, he did offer testimony suggesting KARE 11's actions "conformed to a general pattern of discrimination" against older employees.  Id. at 805.  This evidence included: Ryther's testimony that he was criticized for the bags under his eyes; Mason's testimony that she once considered allowing Ryther to wear glasses because she felt they might help cover them; testimony that several older employees were suddenly given poor performance ratings and forced to choose between early retirement and demotions; testimony that others in the sports department made cutting remarks about Ryther's age, calling him an "old fart," an "old man," and saying he was "too old to be on the air," and "had no business being in the industry any more for his age"; testimony that Shaver and Mason had frequent discussions about Ryther; and testimony that Shaver complained about Ryther to Mason on ostensibly age-related grounds.  In the latter connection, the following excerpt from the testimony of Edward Villaume, a former sports department intern, is illuminating:

> Q: Did you ever hear Randy Shaver make
>    comments about Tom's age?
>
> A: Yes, I did.
>
> Q: And what comments did you hear Randy
>    make about Tom's age?
>
> A: Randy Shaver called Tom Ryther an old
>    man, an old fart, and said he was too
>    old to be on the air.

Q: Did you hear Jeff Passolt make any comments about Tom's age?

A: Yes, I did.

Q: And what comments did you hear Jeff Passolt make about Tom's age?

A: That Tom was an old man. He called him too old to be on the air, couldn't figure out why Randy and himself, Jeff, were not number one, and that Tom had no business being in the industry any more for his age, called him an old fart as well.

Q: Did you hear Randy Shaver make his comments on more than one occasion?

A: Yes, I did.

Q: Approximately how many times did you hear Randy Shaver make those comments?

A: I would say approximately ten or more.

Q: Did you hear Jeff Passolt make those comments on more than one occasion?

A: Yes, I did.

Q: And approximately how many times did Jeff Passolt make those comments?

A: Somewhere around ten. Not as often as Randy.

Q: Did you ever hear Dave Levine, or Levine, make comments about Tom Ryther's age?

A: Yes, I did. Dave would often chime right in with Randy and Jeff, or would make a comment on his own about Tom's age.

* * *

-23-

Q: Had you ever heard Randy Shaver complain to Janet Mason in your presence?

A: Yes.

Q: Can you tell us about what was said on that occasion when you were present when Randy complained to Janet Mason?

A: Randy had said to Janet that Tom was never around any more, that he was on the phone, and that he just wasn't able to grasp the new computer system and couldn't handle the, kind of the newer technology.

Q: Did you ever hear any other staff members make comments about Tom's age?

A: Yes.

Q: And who was that?

A: Brian Singer, who was a camera man, had mentioned that more than once, and also had mentioned the fact that he could not understand how Tom was still in the business and why Randy and Jeff were not the number one anchor position there in the sports department.

KARE 11 argues that the statements referenced in this testimony were not those of persons responsible for the decision not to renew Ryther's contract. To the extent that these statements were made outside the presence of the decisionmakers, KARE 11 is correct that they do not, <u>standing alone</u>, raise an inference of discrimination. <u>Compare</u> <u>Frieze v. Boatmen's Bank of Belton</u>, 950 F.2d 538, 541-52 (8th Cir. 1991) (reversing denial of defendant's motion for JNOV) <u>with</u> <u>Morgan v. Arkansas Gazette</u>, 897 F.2d 945, 950-51 (8th Cir. 1990) (affirming denial of defendant's

-24-

motion for JNOV). The evidence also reveals, however, that Shaver and Mason had frequent discussions about Ryther, and that they discussed Ryther's ability to "grasp" some of the "newer" developments at the station. Furthermore, other evidence shows that Mason was generally responsive to Shaver's ideas and demands, including his request that Ryther be taken off Prep Sports Extra. The jury could thus reasonably infer that Mason formed her judgment about Ryther on the basis of the discriminatory comments frequently made by Shaver, Passolt, Levine, and Singer, and acted on them by terminating him.

KARE 11 dismisses the testimony of three former KARE 11 employees that the station was systematically ridding itself of older employees because those employees were dissimilarly situated and because "'individual employees' opinions of actions taken by their employer, . . . in themselves, are insufficient to support [Ryther's] argument that his age was a determining factor in his discharge.'" Appellants' Br. at 35 (quoting Morgan, 897 F.2d at 950 (alteration ours)).[11] As to KARE 11's reliance on Morgan, we

---

[11]The district court more properly observed:

> Finally, there was evidence that defendants forced other older employees to choose between demotions or early retirement. Several of the older employees were suddenly given poor performance reviews after receiving years of superior ratings. Defendants contend that evidence concerning the older employees was not relevant because they were not on-air talent and, therefore, were not similarly situated to Ryther. Although the situations of the older employees and Ryther differ in some respects, the court finds there were enough similarities to render the evidence relevant and admissible. The court also concludes that a jury could reasonably find that defendants intentionally built poor performance cases against older employees, including Ryther.

Ryther, 864 F. Supp. at 1519.

-25-

think Judge John R. Gibson's opinion for this court in Morgan supports our conclusion:

> Much of the testimony recited above can be described as no more than individual employees' opinions of actions taken by their employer, which, in themselves, are insufficient to support Morgan's argument that his age was a determining factor in his discharge. There was, however, evidence that, during Tinker's administration, a pattern of employees over the age of forty leaving the circulation department and being replaced by younger employees developed. As we observed in MacDissi v. Valmont Industries, Inc., 856 F.2d 1054 (8th Cir. 1988), in a similar context, "[t]his fact is certainly not conclusive evidence of age discrimination in itself, but it is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer's explanation for this outcome." Id. at 1058.

897 F.2d at 950-51 (emphasis added) (footnote omitted). The Morgan court went on to conclude that "additional threads of evidence which can be gleaned from the record," including a reference to a former employee as an "old 'fuddyduddy' [who was] not smart enough to help" his department, and one employee's "observation of a trend away from older, more experienced employees toward younger ones," "support[ed] a finding that age was a determining factor in the decision to fire" the plaintiff. Id. at 951. Thus, while the statements of sports department employees are not, "in themselves," sufficient to uphold the district court, those statements were relevant to the jury and, together with other evidence of pretext, such as a "trend" toward younger employees, and the elements of the prima facie case, support a reasonable inference of age discrimination.

Finally, in Emmel v. Coca-Cola Bottling Co., 95 F.3d 627 (7th Cir. 1996), the Seventh Circuit, confronted with evidence of nondecisionmakers' discriminatory comments, noted that "[t]he jury

-26-

could readily conclude that the statements demonstrated a pervasive attitude" of discrimination.  Id. at 632.  Thus, the court determined that "[t]he remarks are evidence, which together with the other evidence in this case could lead a jury to conclude, by a preponderance of the evidence, that the company engaged in unlawful discrimination."  Id.

We hold the record as a whole supports a reasonable inference that <u>age discrimination</u> motivated KARE 11's decision not to renew Ryther's contract.  The plaintiff produced overwhelming evidence as to the elements of a prima facie case, and strong evidence of pretext, which, when considered with indications of age-based animus in Ryther's work environment, clearly provide sufficient evidence as a matter of law to allow the trier of fact to find intentional discrimination.  As the experienced district judge stated, "[i]t is clear that the jury believed Ryther's evidence and did not believe defendants' proffered explanation."  <u>Ryther</u>, 864 F. Supp. at 1517.

The dissent urges that the district court should have granted KARE 11's post-verdict motion for judgment as a matter of law because the evidence was insufficient to sustain the jury's findings.  This opinion discusses the evidence in detail; we obviously disagree with the position of the dissent in that regard.

We are reminded of the universally adopted standard that judges must be extremely guarded in granting judgments as a matter of law after a jury verdict.  As this court has often repeated, the standard to be applied is as follows:

> [T]he district court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved

-27-

> all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir. 1996) (quoting TEC Floor Corp. v. Wal-Mart Stores, 4 F.3d 599, 601 (8th Cir. 1993) (in turn quoting Western Am., Inc. v. Aetna Casualty & Surety Co., 915 F.2d 1181, 1183 (8th Cir. 1990))).

This court has long held that "[i]n a jury case, where conflicting inferences reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn." Anglen v. Braniff Airways, 237 F.2d 736, 740 (8th Cir. 1956) (citing Lavender v. Kurn, 327 U.S. 645, 652-53 (1946); see also National Molasses Co. v. Herring, 221 F.2d 256, 259 (8th Cir. 1955) ("What frequently seems to be overlooked in cases such as this is that where inconsistent inferences reasonably may be drawn from undisputed evidentiary facts, it is for the jury, and not the court, to determine which inference shall be drawn."). This case clearly presented inconsistent inferences to the jury that KARE 11 would like to be resolved by the court. For example, KARE 11 asserts its proof destroyed the element of the prima facie case relating to Ryther's qualifications for the job. This overlooks Ryther's own proof, which enthusiastically supported his ability and challenged KARE 11's proof as pretextual. The credibility of this evidence was a matter exclusively for the jury to resolve. See Ryther v. KARE 11, 84 F.3d 1074, 1086 (8th Cir. 1996).

At the end of the day, perhaps most instructive is the United States Supreme Court's directive in Lavender v. Kurn, 327 U.S. 645, 653 (1946):

> Only when there is a complete absence of probative facts
> to support the conclusion reached does a reversible error
> appear. But where, as here, there is an evidentiary
> basis for the jury's verdict, the jury is free to discard
> or disbelieve whatever facts are inconsistent with its
> conclusion. And the appellate court's function is
> exhausted when that evidentiary basis becomes apparent,
> it being immaterial that the court might draw a contrary
> inference or feel that another conclusion is more
> reasonable. (emphasis added).

This court continues to espouse the essence of Lavender. In 1996, upholding the district court's decision to submit a particular issue to the jury, Chief Judge Richard S. Arnold instructed, "We do not know what our answer would have been if we had been sitting on the jury, but that is not important. There was conflicting evidence on this issue, and it could have gone either way. Making decisions of this kind is exactly what juries are for." Forbes, 93 F.3d at 501.

## IV

The dissent urges various reasons that the jury instructions were erroneous and a new trial should be granted. In order to preserve an objection for appeal, "[t]he grounds of the objection must be specifically stated, and the error claimed on appeal must be based on the same grounds stated in the objection." Starks v. Rent-A-Center, 58 F.3d 358, 361 (8th Cir. 1995); see Fed. R. Civ. P. 51. After a thorough review of the instruction conference transcript, we determine that only two objections raised in KARE 11's briefs to this court can be said to be made "on the same grounds" as its objections in the district court. First, KARE 11 argues Instruction 20 suggested to the jury that Ryther could prevail simply by establishing a prima facie case. Appellant's Br. at 45. The instruction stated that, if Ryther proved a prima facie

-30-

case, "he has offered evidence from which you could conclude that defendants discriminated against him because of his age." Ryther v. KARE 11, Court's Instructions to the Jury, Instruction No. 20, reprinted in Ryther v. KARE 11, 84 F.3d 1074, 1087 n.14 (8th Cir. 1996). Second, KARE 11 argues that Instruction 20 did not make a distinction between the burden on defendants (of production) and the burden on plaintiffs (of persuasion). Appellant's Br. at 46. In other words, KARE 11 asserts, the instruction did not comport with the teaching of Hicks, because it did not make clear that Ryther carried the burden of establishing both pretext and discrimination by a preponderance of the evidence. Appellant's Pet. for Reh'g and Suggestion for Reh'g en banc at 9.

This court reviews both of these objections under an abuse of discretion standard, paying particular heed to the fundamental rules this court has long followed, best summarized in Hastings v. Boston Mut. Life Ins. Co., 975 F.2d 506, 510 (8th Cir. 1992):

> A district court has broad discretion in instructing the jury. In conducting our review this Court reverses a judgment only if we find that, when viewed in their entirety, the jury instructions contained an error or errors that affected the substantial rights of the parties. United States E.P.A. v. City of Green Forest, Arkansas, 921 F.2d 1394, 1406 (8th Cir. 1990), cert. denied sub nom., Work v. Tyson Foods, Inc., 502 U.S. 956, 112 S. Ct. 414, 116 L.Ed.2d 435 (1991). Accordingly, we will not find error in instructions simply because they are technically imperfect or are not a model of clarity. See Federal Enterprises, Inc. v. Greyhound Leasing & Fin. Corp., 849 F.2d 1059, 1061 (8th Cir. 1988).

Under this standard, we must reject both of KARE 11's arguments against Instruction 20. Well settled is the rule that jury instructions must be read as a whole. Walker v. AT&T

<u>Technologies</u>, 995 F.2d 846, 849 (8th Cir. 1993).  Instruction 20 in full reads as follows:

Under federal law, it is unlawful for an employer to discriminate against an employee because of that employee's age, when the employee's age is 40 or over.

In order for you to find for plaintiff, plaintiff must prove by a preponderance of the evidence that his age was a determining factor in the defendants' decision not to renew his contract.

Plaintiff is not required to produce direct evidence of unlawful motive. Discrimination, if it exists, is seldom admitted, but is a fact which you may infer from the existence of other facts.

In deciding whether Plaintiff's age was a determining factor in defendants' decision, you should first consider whether plaintiff has established the following facts by a preponderance of the evidence:

First:  Plaintiff was within the protected age group, that is, he was 40 years of age or over;

Second:  Plaintiff's job performance was satisfactory;

Third:  Plaintiff was terminated from his job when his contract was not renewed; and

Fourth:  A younger person with similar credentials replaced plaintiff.

If plaintiff has failed to prove one or more of these facts, you must find for the defendants.

If plaintiff has proven these facts, he has offered evidence from which you could conclude that defendants discriminated against him because of his age.

If you find that plaintiff has proven these facts, you must consider whether defendants have produced evidence of a reason other than age for not renewing plaintiff's contract.

Defendants have offered evidence of legitimate, non-discriminatory reasons for their actions, therefore,

-32-

> plaintiff must prove by a preponderance of the evidence that the reasons offered by defendants are merely a pretext or cover-up for intentional age discrimination.
>
> You should not consider whether the reasons given by defendants constitute a good or bad business decision. You may not return a verdict for plaintiff just because you may disagree with defendants' decision or believe it was harsh or unreasonable.

A reading of this instruction in its entirety makes it clear that KARE 11's first argument must fail. KARE 11's objection seeks to isolate the sentence on the prima facie case from the preceding and following sentences. For jurors to believe Ryther could have prevailed by establishing only a prima facie case, they would have had to stop reading after the complained-of sentence. See Forbes v. Arkansas Educ. Television Comm'n, 93 F.3d 497, 501 (8th Cir. 1996) ("We have great faith in juries, and their desire and ability to follow instructions and make distinctions among the various issues put before them.").

KARE 11's second argument must fail as well. First, Instruction 20 twice states Ryther's burden to prove age discrimination. In addition, Instruction 4 further clarified Ryther's burden:

> The burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claim by a preponderance of the evidence. If the proof should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence in the case, the jury should find for the defendants as to that claim.

Ryther v. KARE 11, Court's Instructions to the Jury, Instruction No. 4. While we believe Instruction 20 standing alone is a correct statement of the law, it is buttressed by this directive in Instruction 4. In addition, Judge Doty pointed out that KARE 11

-33-

was free to argue, as it did, that Ryther's failure to carry its burden of proof as to any element of the case required the jury to return a verdict for the defendant. Neither of KARE 11's arguments convince the court Judge Doty abused his discretion in giving Instruction 20.

Any other objection to this instruction has been waived because KARE 11 failed to make it at the instruction conference and argue it on appeal. See Tr. VII-167-79. Objections that have been waived are reviewed by this court for plain error, which is "narrow and confined to the exceptional case where error has seriously affected the fairness, integrity, or public reputation of the judicial proceedings." Des Moines Bd. of Water Works Trustees v. Alvord, 706 F.2d 820, 824 (8th Cir. 1983) (citations omitted). No serious argument can be made that this standard is met here.

Finally, in the instruction conference and in its briefs to this court, KARE 11 asserts the district court denied certain requested instructions. Grant of these requests by this court would invade the province of the district court. "The trial court has a great deal of discretion in framing the jury instructions and the court need not give the exact language desired by the parties." Campbell v. Vinjamuri, 19 F.3d 1274, 1277 (8th Cir. 1994). In addition, Fed. R. Civ. P. 51 requires that once a request is denied, a party in order to preserve error on appeal must specifically object as to the omission of any request. See Fed. R. Civ. P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."). KARE 11 did not preserve any objection as to any of its denied requests. Judge Doty's decision to give Instruction 20 to the jury over other

-34-

language offered by KARE 11 was not an abuse of his discretion, and does not warrant a new trial.

## CONCLUSION

On the basis of the overall record and briefs, we hold there exists substantial evidence in the record to support the jury's finding of intentional age discrimination.  In addition, we find no prejudicial error in the instructions and hold that the trial court did not err in denying the motion for new trial.  On this basis, we find that the judgment should be affirmed.


JUDGMENT AFFIRMED.


FAGG, BEAM, and HANSEN, Circuit Judges, concurring in part and dissenting in part.

Judges Fagg, Beam, and Hansen concur in Parts I, II, and III of the court's opinion.  We also concur in Part I.A. of the dissent because we feel this Part makes clear that in keeping with the traditional sufficiency of the evidence analysis, an employment discrimination plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent to avoid judgment as a matter of law.

Instead of joining Part IV of the court's opinion, we join in Parts II.A. and II.B. of the dissenting opinion.  We concur with the dissent's view that neither Instruction 20 from this case nor the instruction found in Section 106.04 of Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, should be used by the district courts.  Judges Fagg and Beam also join in Part II.C. of the dissenting opinion, and thus dissent from Part IV of the court's opinion.  Believing that when the instructions are read as

-35-

a whole the internal inconsistency in Instruction 20 does not require reversal in this case, Judge Hansen concurs in the result reached in Part IV of the court's opinion.

LOKEN, Circuit Judge, dissenting.

I respectfully dissent. This appeal raises two important issues in applying St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993): first, what is the proper standard for granting judgment as a matter of law (JAML) under Hicks; and second, whether jury instructions frequently given in ADEA cases, including this one, are inappropriate after Hicks. Though I agree with the court's JAML standard, I conclude that KARE 11 is entitled to JAML on the facts of this case, and I further conclude that the district court's jury instructions were reversible error under Hicks. Accordingly, I would reverse. A majority of the active circuit judges join in Part I.A., which is a partial separate concurrence, and in Parts II.A and II.B. of this opinion.

## I. JAML Issues.

### A. The Proper Standard.

Hicks resolved a conflict among the circuits by holding that a finding of pretext does not *compel* a finding that the employer was guilty of intentional age discrimination.[12] Focusing on the passage in Hicks quoted at page 7 and again in footnote 5 of the court's opinion, some circuits have concluded, erroneously in my

---

[12]In O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307, 1310 (1996), the Court noted that it has never held that the McDonnell Douglas paradigm applies to ADEA cases. But the Court continues to use that analysis in age cases, and so do we. See Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir. 1996).

view, that submissible evidence of pretext will *always* defeat an employer's motion for summary judgment or JAML.  See Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066-72 (3d Cir. 1996) (en banc).  Other circuits disagree.  See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc).  Panel opinions of this court have consistently held that the district court may grant summary judgment or JAML for the employer even if plaintiff has some evidence of pretext if that evidence, for one reason or another, falls short of proving intentional discrimination. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1335 (8th Cir. 1996), succinctly stated this rule:  "Intentional discrimination *vel non* is like any other ultimate question of fact: either the evidence is sufficient to support a finding that the fact has been proven, or it is not."

The Supreme Court concluded its opinion in Hicks by stating that we should not "treat discrimination differently from other ultimate questions of fact."  509 U.S. at 524, quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983).  That is direct support for the rule in Rothmeier, because a factfinder's finding of intentional discrimination is subject to meaningful judicial review.  See Anderson v. Bessemer City, 470 U.S. 564, 573 (1985); Fed. R. Civ. P. 50(a)(1), 52(a).  Though an implausible interpretation of the passage quoted on page 7 of the court's opinion could support a contrary view, the Court in Hicks explicitly warned us not "to dissect the sentences of the United States Reports as though they were the United States Code."  509 U.S. at 515.

The final paragraph of Part II of the court's opinion confirms that Rothmeier is the law of this circuit.  In Part III of its opinion, the court then properly reviews Ryther's pretext and other

evidence in great detail before concluding, "there exists substantial evidence in the record to support the jury's finding of intentional age discrimination." Supra, at 36. Though I disagree with the result the court reaches in this case, I concur in the legal standard it has adopted and applied.[13]

## B. Applying the Standard in This Case.

My prior panel dissent discussed at length why I would hold that the district court erred in denying KARE 11's motion for JAML. See Ryther v. KARE 11, 84 F.3d 1074, 1090-92 (8th Cir. 1996). To summarize briefly, ten years of professional market research suggested that Ryther as lead sportscaster did not attract Twin Cities viewers. In 1988 and 1989, the station brought in two new managers, Janet Mason and Linda Rios Brooks, who retained a different market research organization to survey Twin Cities viewers. When Gallup reported that Ryther had again fared poorly, Mason, Brooks, and the third decisionmaker, Richard Modig, made the rational decision not to rehire Ryther when his fourth three-year employment contract expired.

At trial, all three decisionmakers testified that their decision was based upon the market research. There is no "suspicion of mendacity" here, not even a hint that this testimony was untruthful. Instead, the district court and this court labor

_____

[13]To summarize, under this standard, while plaintiff may rely on the same evidence to prove both pretext and discrimination, that evidence must be sufficient to prove that the employer is guilty of intentional discrimination. Therefore, a trial judge may decide on a motion for summary judgment or JAML that the evidence is insufficient for a reasonable trier of fact to infer unlawful discrimination, even if plaintiff has presented some evidence of pretext. We review rulings on such motions under our traditional summary judgment and JAML standards.

mightily to demonstrate that the reason is not credible because Ryther was out of favor before the Gallup survey began (a true red herring), and because the market research was flawed. But evidence of an unsound decision is not probative of intentional age discrimination. To prove intentional discrimination, pretext evidence "must call into question the veracity of the defendant's ultimate justification." <u>Isenbergh v. Knight-Ridder Newspaper Sales, Inc.</u>, 97 F.3d 436, 444 (11th Cir. 1996). <u>See also</u> <u>Woodman v. Haemonetics Corp.</u>, 51 F.3d 1087, 1092-94 (1st Cir. 1995); <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1124 (7th Cir. 1994) (plaintiff must "produce evidence from which a rational factfinder could infer that the company lied"). Here, Ryther's weak prima facie case and unconvincing pretext evidence are insufficient for any reasonable factfinder to conclude that Ryther's age was a determining factor in KARE 11's refusal to renew his contract.

## II. Instructional Error.

### A.

Though jury instructions were not at issue in <u>Hicks</u>, the decision provides guidance on a troublesome instruction issue. The issue, broadly stated, is whether to involve the jury in the <u>McDonnell Douglas</u> paradigm that dominates judges' review of the evidence in employment discrimination cases. <u>Hicks</u> clearly signals that the answer in most cases is no. If the employer has articulated a legitimate nondiscriminatory reason for its challenged adverse action:

> [t]he defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has

> proven 'that the defendant intentionally discriminated
> against [him]' because of his [age].

509 U.S. at 511 (quoting Burdine, 450 U.S. at 253). In other words, the jury need not make findings regarding the plaintiff's prima facie case or whether the employer's explanation is pretextual. Though judges when deciding summary judgment and JAML motions must filter evidence through the McDonnell Douglas paradigm, the jury need only decide the ultimate issue of intentional age discrimination.[14]

Since Hicks, other circuits have held that instructions should normally be limited to the ultimate discrimination issue. See Woodhouse v. Magnolia Hosp., 92 F.3d 248, 257 (5th Cir. 1996) ("it is improper to instruct the jury on the elements of the prima facie case"); Gehring v. Case Corp., 43 F.3d 340, 343 (7th Cir. 1994) ("the *only* question the jury need answer -- is whether the plaintiff is a victim of intentional discrimination"), cert. denied, 115 S. Ct. 2612 (1995). But in Kehoe v. Anheuser-Busch, Inc., 96 F.3d 1095, 1105 (8th Cir. 1996), our panel concluded that "the district courts in this circuit are constrained to instruct juries on the elements of the prima facie case" because a strong prima facie case plus evidence of pretext may be sufficient to infer intentional discrimination. I disagree with that conclusion. The instructions *must* tell the jury to resolve the ultimate issue of intentional discrimination. Beyond that, although the district court has broad discretion in formulating instructions, it is not

---

[14]Conversely, in the rare case when the employer has not articulated a legitimate nondiscriminatory reason, the jury must decide any disputed elements of the prima facie case and is instructed to render a verdict for plaintiff if those elements are proved. 509 U.S. at 509-10 & n.3.

"constrained to" instruct how discrimination can be proved -- that is the task of attorneys in closing argument.[15]

## B.

Since <u>Hicks</u>, one frequently used instruction treatise has proposed an instruction that is flatly contrary to <u>Hicks</u>. The proposal in Devitt, Blackmar & Wolff, <u>Federal Jury Practice & Instructions</u> § 106.04 (1996 supp.), first instructs the jury to consider the elements of plaintiff's prima facie case and states that, if plaintiff has proved a prima facie case, "you may, but you need not, render a verdict" for plaintiff. Under <u>Hicks</u>, that portion of the instruction, standing alone, is clear error. Section 106.04 goes on to instruct that, if defendant has produced evidence of a reason other than age, "you must find for the defendant unless you find . . . that plaintiff has proved that the reason given by the defendant was not the true reason for the action." That instruction, which divorces pretext from the ultimate issue of intentional discrimination, is squarely contrary to the *holding* in <u>Hicks</u>. In my view, use of § 106.04 in future cases will be reversible error.

In this case, the district court based its Instruction 20 on the misguided Devitt, Blackmar & Wolff format. In first instructing the jury to find whether Ryther proved the elements of

---

[15]We have previously observed that instructions incorporating the <u>McDonnell Douglas</u> paradigm "add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination." <u>Grebin v. Sioux Falls Indep. Sch. Dist. No. 49-5</u>, 779 F.2d 18, 20 (8th Cir. 1985) (quotation omitted).

a prima facie case, the court modified the comparable language in § 106.04, but if anything it magnified the clear error:

In deciding whether plaintiff's age was a determining factor in defendants' decision, you should first consider whether plaintiff has established the following facts by a preponderance of the evidence:

First: Plaintiff was within the protected age group, that is, he was 40 years of age or over;

Second: Plaintiff's job performance was satisfactory;

Third: Plaintiff was terminated from his job when his contract was not renewed; and

Fourth: A younger person with similar credentials replaced plaintiff.

If plaintiff has failed to prove one or more of these facts, you must find for the defendants. <u>If plaintiff has proven these facts, he has offered evidence from which you could conclude that defendants discriminated against him because of his age.</u>

(Emphasis added.) In other words, the court instructed that the jury could find for Ryther if he proved the elements of a prima facie case. That is wrong under <u>Hicks</u>, and the error is clearly prejudicial because "the burden of establishing a prima facie case of disparate treatment is not onerous." <u>Burdine</u>, 450 U.S. at 253. KARE 11 preserved the issue by objecting to this aspect of Instruction 20 and proposing alternative instructions.

## C.

We review jury instructions to determine whether as a whole they adequately and sufficiently state the applicable law. In an ADEA case, the main issue is whether, "[r]eading the instructions as a whole, it is evident that the jury's consideration was directed to whether age was the determining factor in [the

-43-

employer's adverse action]." Slathar v. Sather Trucking Corp., 78 F.3d 415, 418 (8th Cir.), cert. denied, 117 S. Ct. 179 (1996).

Here, Instruction 20 contains a clear error of law in the middle of a lengthy, complex instruction. (The entire Instruction 20 is quoted at pages 32-33 of the court's opinion.) No other instruction dealt with this issue, so any "cure" must be found in the remainder of Instruction 20. Following the above-highlighted error, the jury was told:

> If you find that plaintiff has proven these facts, you must consider whether defendants have produced evidence of a reason other than age for not renewing plaintiff's contract.

> Defendants have offered evidence of legitimate, nondiscriminatory reasons for their actions, therefore, plaintiff must prove by a preponderance of the evidence that the reasons offered by defendants are merely a pretext or cover-up for intentional age discrimination.

Standing alone, this portion of the instruction was permissible (though as I have explained, ill-advised). The question is, did it cure the prior error. In Smalley v. Duluth, W. & Pac. Ry., 940 F.2d 296, 298 (8th Cir. 1991), cert. denied, 502 U.S. 1060 (1992), we faced this exact issue and reversed, based upon "the general proposition that if two or more conflicting statements of law are suggested, it cannot be presumed that the jury followed the proper rule." In my view, Smalley was correctly decided and is controlling here.

The jury was erroneously instructed that it could find for Ryther if he proved the elements of a prima facie case. It was later instructed that Ryther must prove pretext for intentional discrimination. The earlier error was not explicitly corrected, and the relationship between the two conflicting instructions was

not explained.  As the prima facie case is easy to prove, the first instruction invited the jury to render a verdict for Ryther if it concluded KARE 11 had treated him unfairly.  The second instruction limited the jury to its proper role under ADEA.  Because the issue is critical to the scope of the federal statute, because the evidence of intentional age discrimination in this case was weak at best, and because we cannot know which instruction the jury obeyed, KARE 11 is entitled to a new trial.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.