# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2658

_____

| | | |
|---|---|---|
| Ronald Keith Smith, | * | |
| | * | |
| Appellee, | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Des Moines Public Schools, | * | Southern District of Iowa |
| | * | |
| Appellant. | * | |

_____

Submitted: April 9, 2001

Filed: August 7, 2001

_____

Before McMILLIAN and LOKEN, Circuit Judges, and GOLDBERG,[1] Judge.

_____

McMILLIAN, Circuit Judge.

Des Moines Independent Community School District ("the District") appeals from a final judgment entered in District Court[2] for the Southern District of Iowa, following a jury verdict in favor of Ronald K. Smith, finding the District liable for defamation. Smith v. Des Moines Public School System, No. 4-98-CV-90368 (S.D.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

[2]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Iowa June 1, 2000). For reversal, the District argues that (1) the district court erred in denying its motion for judgment as a matter of law because the allegedly defamatory statements were true or substantially true, and (2) there was insufficient evidence for a reasonable jury to conclude that actual malice existed. For the reasons discussed below, we affirm the judgment of the district court.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. § 1367(a).[3] Jurisdiction on appeal is proper based upon 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

The following facts are stated in the light most favorable to the jury's verdict. The District hired Smith as the director of technology systems in July 1995. In that position, he reported to Pat Moran, the associate superintendent of management services, and supervised three employees, including Donna Pittman, an executive secretary, and Jacquelyn Seymour, an outside project manager specialist hired by Smith. According to Smith, the technology department was in disarray when he arrived and he exposed serious problems and initiated many controversial changes, which were met with heated resistance, especially by the District's superintendent, Gary Wegenke. At Moran's request, his executive secretary, Linda Dinsdale, along with Smith's secretary, Pittman, began keeping secret files on Smith, which documented the whereabouts and work activities of Smith and Seymour, their phone messages,

---

[3]District court jurisdiction was originally predicated on 28 U.S.C. § § 1331 and 1332. After the district court dismissed the federal claims pursuant to a motion for summary judgment, it retained jurisdiction over the remaining state claim pursuant to 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction.

calendars, correspondence, overheard phone conversations, and other meetings. Smith discovered the existence of these files on June 30, 1996.

On July 2, 1996, Smith met with Wegenke and asked about the files. Smith suspected that the purpose of the files was to make him the scapegoat for the technology department's failures. He also thought that they indicated racial animus toward Seymour, an African-American. When Wegenke challenged Smith to produce the files, Smith went to retrieve them from the file cabinet where the files were kept between Smith's office and Dinsdale's desk. Dinsdale tried to stop him and the two had physical contact. Smith contends that he accidentally bumped into Dinsdale as she tried to prevent him from reaching the files. Dinsdale received a bruise on her arm about 2-3 inches in diameter. Smith obtained the files and returned to his office to show them to Wegenke, without mentioning the incident.

Dinsdale later complained to Wegenke that Smith hit her when he retrieved the files, and the District began an internal investigation, overseen by its attorney, Peter Pashler. Smith and two school board members, Suzette Jensen and John Phoenix, characterized this investigation as a "witchhunt," motivated by Wegenke's desire to terminate and defame Smith. On July 3, 1996, Smith was placed on administrative leave pending the outcome of the investigation. On July 4, 1996, Dinsdale filed a complaint with the Des Moines Police Department alleging that Smith assaulted her. The District was not involved in her criminal complaint in any official capacity, but did refer Dinsdale to an attorney and pay her attorney's fees. Smith believed that the criminal charges were used as leverage against him to persuade him to resign.

Two District employees witnessed the incident and related the following accounts: (1) Mike Tidman told an investigating police officer that he saw Smith raise his left arm and push Dinsdale away, and (2) Lynne Harrison told the police officer that Smith "used his body like to deflect or shove away" as he was standing up. Smith

testified that he accidentally bumped into Dinsdale as he was retrieving the files and righting himself as he stood up.

Smith was charged with assault on July 11, 1996, was arrested on July 12, 1996, and was released the same day after posting bond. On August 22, 1996, Dinsdale signed a confidential settlement agreement and mutual release, releasing Smith, from any further liability in connection with the July 2 incident. On August 23, 1996, the prosecutor filed a notice of intent not to prosecute on the basis that the victim did not want to pursue prosecution.

On August 26, 1996, the District gave Smith a general release and separation agreement and told him he must either sign both documents or face termination proceedings. Smith signed the release, in which he agreed to resign voluntarily and not sue the District. Smith's resignation was approved at a District board meeting on August 27. After the vote, in open session, Wegenke read a statement he had prepared with the assistance of the District's counsel, which included the following statements: (1) "the incident that took place in early July in the technology offices is regrettable. As I said to an assembly of central office staff following the incident, I will not tolerate an unsafe workplace for our employees," and (2) "the action of the District's lawyers and Mr. Smith's lawyers have been focused on reaching a compromise settlement, a settlement that has been motivated on the District's side of the issue of employee safety in the workplace." At trial, Wegenke testified that these statements were made in good faith, for the purpose of addressing workplace safety, and that he did not intend to slander Smith. After hearing these statements, Smith attempted to revoke the settlement agreement, pursuant to a section of the agreement enabling him to revoke within 7 days. In a meeting between counsel from both sides, Pashler, the District's counsel, produced a photograph allegedly taken of Dinsdale's bruised arm, which prompted Smith to reconsider revoking the settlement agreement because he feared that the District might bring future criminal charges against him.

Following Smith's resignation, despite much resistance from Wegenke, school board member Suzette Jensen initiated an audit of the technology department, which confirmed Smith's assessment of the District's technology problems. The audit was released in November 1996 and blamed Smith for the technology department's problems. Smith, Jensen, and another technology department employee believed the audit was designed to make Smith the District's scapegoat for its technology problems.

In July 1998, Smith filed this action *pro se* in the United States District Court for the Southern District of Iowa. In September 1999, he filed an amended complaint with the help of counsel. Following various pretrial and trial motions, the ten originally-filed counts against the District, including some arising under federal law, were reduced to one state law count of defamation. The district court retained supplemental jurisdiction over the remaining Iowa defamation claim pursuant to 28 U.S.C. § 1367(a). The matter proceeded to a four-day jury trial. The jury found that the District committed slander per se against Smith and awarded Smith $250,000 in compensatory damages. The District moved for judgment as a matter of law or, in the alternative, for a new trial. The district court denied the motion on June 1, 2000. This appeal followed.

**Discussion**

Standard of Review

The District first argues that the district court erred in denying its motion for judgment as a matter of law because the allegedly defamatory statements were true or substantially true. We review the denial of a motion for judgment as a matter of law *de novo*, applying the same standard as the district court. Denesha v. Farmers Ins. Exch., 161 F.3d 491, 497 (8th Cir. 1998) (Denesha). Like the district court, we consider whether sufficient evidence exists to support the jury's verdict. See Lundell Mfg. Co. v. ABC, 98 F.3d 351, 355 (8th Cir. 1996) (Lundell), cert. denied, 522 U.S. 810 (1997). We will defer to a jury verdict unless, "after viewing the evidence in the

-5-

light most favorable to the verdict, we conclude that no reasonable juror could have returned the verdict for the non-moving party." Denesha, 161 F.3d at 497 (quoting Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997) (en banc)). In considering this issue, we must: (1) examine the evidence in the light most favorable to Smith as the non-moving party, (2) resolve all conflicts in favor of Smith, (3) assume that all facts which Smith's evidence tended to prove are true, (4) give Smith the benefit of all inferences that may reasonably be drawn in his favor, and (5) affirm the denial of the District's motion unless it is unreasonable to sustain Smith's position. Id. We review the denial of a new trial for abuse of discretion, and will reverse the district court's ruling only if "'the jury's verdict were against the great weight of the evidence so as to constitute a miscarriage of justice.'" Id. (quoting Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995)).

Defense of Truth or Substantial Truth

Iowa substantive law applies to the issue of whether substantial truth serves as a defense in a defamation action. See In re IBP Confidential Bus. Documents Litigation, 797 F.2d 632, 639 (8th Cir. 1986). In Iowa, substantial truth does serve as a defense in a defamation action. See Behr v. Meredith Corp., 414 N.W.2d 339, 342 (Iowa 1987) (Behr). As a result, it is "[not] necessary for a libel defendant to establish the literal truth of the publication in every detail as long as the 'sting' or 'gist' of the defamatory charge is substantially true." Behr, 414 N.W.2d at 342 (citing Hovey v. Iowa State Daily Publ'n Bd., 372 N.W.2d 253, 256 (Iowa 1985)). The "sting" or "gist" of an allegedly defamatory remark is defined as "'the heart of the matter in question – the hurtfulness of the utterance.'" Id. (quoting Vachet v. Central Newspapers, Inc., 816 F.2d 313, 316 (7th Cir. 1987)).

The District argues that the district court erred in failing to hold as a matter of law that the allegedly defamatory remarks were substantially true. See Brief for Appellant at 19 (citing Behr, 414 N.W.2d at 342). The District reasons that the

allegedly defamatory remarks were substantially true because they captured the "sting or gist of the defamatory charge," which the District characterizes as Smith's unsafe workplace behavior in pushing Dinsdale out of his way to get the files.  Id.

The District is correct that a court may determine as a matter of law whether a statement has the gist or sting of the defamatory charge when the underlying facts are undisputed.  See Behr, 414 N.W.2d at 342.  Under those circumstances, the court bases its findings on "whether the plaintiff would have been exposed to any more opprobrium had the publication been free of error."  Id.  The District argues that the district court erred in failing to find that the allegedly defamatory remarks were substantially true because they would have created the same impact even if the words "unsafe workplace" were substituted with the actual words used by the witnesses to describe the incident.  See Brief for Appellant at 24 (citing Lundell, 98 F.3d at 360 (finding substantial truth "when the sting of the implication is still present when the full chronology is laid out")).

However, the District fails to recognize that when the underlying facts regarding the allegedly defamatory remarks are disputed, the question of substantial truth must be submitted to a jury.  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 522-25 (1991) (analyzing whether allegedly defamatory statements differed materially enough in meaning from the underlying facts "to create an issue of fact for a jury as to falsity"); Lundell, 98 F.3d at 358 (holding that when "it is evident that the underlying facts as to the gist of the statement are the subject of a reasonable dispute . . . it is for the jury to decide the meaning conveyed");  Wilson v. IBP, Inc., 558 N.W.2d 132, 140-41 (Iowa 1996) (holding that the district court properly dismissed a motion for judgment as a matter of law and submitted the issues to the jury when an allegedly defamatory statement could reasonably be understood as imputing dishonesty to the plaintiff and an attack on his integrity and moral character).

-7-

In the present case, the underlying facts were disputed and there was a triable issue of fact regarding whether Smith's contact with Dinsdale was in fact accidental. Furthermore, there was substantial evidence in the record from which a reasonable jury could have concluded that the District's statements characterizing Smith as a dangerous employee were false and defamatory. As a result, we hold that the district court did not err in denying the District's motion for judgment as a matter of law or for a new trial on the issue of whether the allegedly defamatory statements were substantially true.

Actual Malice

The District contends that the district court erred in failing to recognize that the allegedly defamatory remarks were made in good faith, not with actual malice, and therefore entitled the District to the alternative defense of qualified privilege. We disagree.

Under the law of defamation in Iowa, a defendant may assert the affirmative defense of qualified privilege if the allegedly defamatory remarks were "made in good faith on any subject matter in which the person communicating has an interest, or in reference to which that person has a right or duty, if made to a person having a corresponding interest or duty in a manner and under circumstances fairly warranted by the occasion." Knudsen v. Chicago & N.W. Transp. Co., 464 N.W.2d 439, 442 (Iowa 1990); see also Haldeman v. Total Petroleum, Inc., 376 N.W.2d 98, 104 (Iowa 1985) (Haldeman) "[T]he availability of the privilege is for the court rather than the jury to decide." Vinson v. Linn-Mar Cmty. Sch. Dist., 360 N.W.2d 108, 116 (Iowa 1984) (Vinson). The parties agree that the District is entitled to assert the qualified privilege defense because the allegedly defamatory remarks addressed matters related to the termination of an administrator. See Vojak v. Jensen, 161 N.W.2d 100, 105 (Iowa 1968).

Once the district court allows a defendant to assert the qualified privilege defense to a defamation claim, as in this case, the burden shifts to the plaintiff to prove actual malice, which is a question of fact for the jury. See Haldeman, 376 N.W.2d at 104. The District argues that there was insufficient evidence for a jury to find actual malice because actual malice requires proof of ill will or wrongful motive, which did not exist in the present case. See Vinson, 360 N.W.2d at 117 ("[a]ctual malice requires proof that the statement was made with malice in fact, ill will or wrongful motive"). Specifically, the District maintains that there was not sufficient independent evidence to support a finding that there was a rift between Smith and Wegenke, or that Wegenke's approval of the secret files indicated any actual malice. See Brief for Appellant at 32 (citing Sawheny v. Pioneer Hi-Bred, 93 F.3d 1401, 1404 (8th Cir. 1996) (refusing to find ill will or wrongful motive when the alleged defamation was part of a larger explanation)).

The District is correct that, under Iowa law, actual malice "requires proof that the statement was made with ill will, hatred, the desire to do another harm, or wrongful motive." See Marks v. Estate of Hartgerink, 528 N.W.2d 539, 546 (Iowa 1995) (Marks). See also Iowa Civil Jury Instruction 2100.5 (defining actual malice as "statements made with ill will or wrongful motive"); King v. Sioux City Radiological Group, 985 F. Supp. 869, 879-80 (N.D. Iowa 1997) (defining actual malice as dependent upon the motive behind the allegedly defamatory communication). As a result, Smith needed to prove only that Wegenke harbored ill will against him, not that Wegenke knew that his statements were false or that he showed a reckless disregard for the truth. See Marks, 528 N.W.2d at 546 (clarifying that actual malice, as distinct from implied malice, does not require a showing of knowing falsity or reckless disregard for the truth).

Because a reasonable jury could find sufficient evidence of Wegenke's ill will toward Smith, including evidence of an attempt to pin the blame for the problems and mismanagement of the technology department on Smith, the existence of the secret

files, and the documented rift between Smith and Wegenke, we hold, in agreement with the district court, that sufficient evidence existed to support the jury's verdict. We further hold, in agreement with the district court that, because the jury resolved the factual issue by finding that Wegenke's statements were false and malicious, we must defer to that finding. Denesha, 161 F.3d at 497. We therefore hold that the district court did not err in denying the District's motion for judgment as a matter of law or abuse its discretion in refusing to grant the District's motion for a new trial on the issue of whether there was sufficient evidence of actual malice, notwithstanding the District's assertion of the qualified privilege defense.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-